## DAVIS, Adm'r, *vs.* LANE.

The authority of an agent, where the agency is revocable, ceases, or is suspended, by the insanity of the principal, or his incapacity to exercise any volition upon the subject matter of the agency in consequence of an entire loss of mental power.

If, however, the principal has enabled the agent to hold himself out as having authority, by a written letter of attorney, or by a previous employment, and the incapacity of the principal is not known to those who deal with the agent within the scope of the authority he appears to possess, the principal, and those who claim under him, may be precluded from setting up the insanity as a revocation.

The principle that insanity operates as a revocation, cannot apply where the power is coupled with an interest, so that it can be exercised in the name of the agent.

Whether it is applicable to the case of a power which is part of a security, or executed for a valuable consideration—*quere ?*

ASSUMPSIT, upon a promissory note.

It appeared in evidence that Foss, the plaintiff's intestate, for some time previous to his death, which happened in October, 1833, held a note against the defendant, for $50·00 ; and on the day of his decease, and when he was entirely senseless, and no hopes were entertained of his recovery, one Jeremiah Prescott, to whom Foss was indebted in the sum of about $46·00, came, in company with the plaintiff, to the house of Foss ; and, after some conversation, it was suggested to the wife of Foss, that she had better give up to Prescott the note her husband had against the defendant, and pay the debt due him, which after some hesitation she concluded to do ; upon which the amount due Prescott was deducted from the amount of the note against the defendant, and a note for $4·00 or $5·00 was given by Prescott, payable to Foss, as a balance. The defendant afterwards paid Prescott the amount of his note. This suit was brought to recover the amount of the note, on the ground that the wife of Foss had no authority to deliver up the note to Prescott and have it applied in the manner before mentioned.

There was evidence, on the part of the defendant, tending

to show that for several years previous to this transaction Foss's wife had been his general agent for transacting all his business, and that she was authorized to settle this concern in the manner she did ; but the plaintiff insisted that if she had been agent, the situation of Foss at the time of the transaction, which was well known to her and the others concerned, operated in law as a revocation of her agency.

The court charged the jury, that if they were satisfied that the wife had been the general agent of her husband for several years previous, the situation in which he was placed when said business was transacted, although well known to her and Prescott, did not operate in law as a revocation of her agency. The jury returned a verdict for the defendant, and the plaintiff moved for a new trial.

*Britton, & Quincy,* for the plaintiff.

*Jos. Bell,* for the defendant.

PARKER, C. J.    There is no pretence that a wife, as such, has any authority to dispose of the husband's goods, or adjust his affairs, by reason of his incapacity to transact business.

But it is contended, in this case, that the wife having had a general power to transact business for her husband previous to his illness, nothing but an express revocation of that power, or some occurrence which divests and transmits the property, as death, or bankruptcy, will terminate her authority to act as the agent of her husband ; and that she therefore might well dispose of the note in question, notwithstanding her husband was utterly insensible, and incapable of any volition whatever ; and this well known to her, and to Prescott, to whom she passed it ; and notwithstanding he continued in that state until his decease.

The authorities show that the death of the constituent terminates the authority, unless the power is coupled with

an interest so that it may be executed in the name of the agent. 2 *Green. R.* 18, *Harper* vs. *Little ;* 2 *Mason's R.* 244, *Hunt* vs. *Rousmaniere's Adr. ;* 8 *Wheat. R.* 174, *S. C. ;* 4 *Camp.* 274, *Waters* vs. *King ;* 2 *Livermore on Agency* 302. So bankruptcy, on his part, operates as a revocation. 16 *East's R.* 386, *Parker* vs. *Smith.* So marriage of a single woman terminates a power to confess a judgment in her behalf. 1 *Salk.* 399, *Anon. ;* 2 *Livermore on Agency* 307.

In all these cases an end is put to the power of the principal to act ; and, moreover, the operation of law transfers the estate, upon which the power might operate, to the custody and control of others. In this latter respect these cases are unlike the one before us ; and no authority has been cited, or found, which will directly settle the present case.

We are of opinion, however, that the authority of the agent, where the agency is revocable, must cease, or be suspended, by an act of Providence depriving the constituent of all mind and ability to act for himself ; and that this doctrine can be sustained by very satisfactory principles.

An authority to do an act, for, and in the name of, another, pre-supposes a power in the individual to do the act himself, if present. The act to be done is not the act of the agent, but the act of the principal ; and the agent can do no act in the name of the principal which the principal might not himself do, if he were personally present. The principal is present by his representative, and the making or execution of the contract, or acknowledgment of a deed, is his act, or acknowledgment.

But it would be preposterous, where the power is in its nature revocable, to hold that the principal was, in contemplation of law, present, making a contract, or acknowledging a deed, when he was in fact lying insensible upon his death bed, and this fact well known to those who undertook to act with and for him. The act done by the agent, under a revocable power, implies the existence of volition on the part of the principal. He makes the contract—he does the

Davis *v.* Lane.

act. It is done through the more active instrumentality of another, but the latter represents his person, and uses his name.

Farther—Upon the constitution of an agent or attorney to act for another, where the authority is not coupled with an interest, and not irrevocable, there exists, at all times, a right of supervision in the principal, and power to terminate the authority of the agent at the pleasure of the principal. The law secures to the principal the right of judging how long he will be represented by the agent, and suffer him to act in his name. So long as, having the power, he does not exercise the will to revoke, the authority continues.

When, then, an act of Providence deprives the principal of the power to exercise any judgment or will on the subject, the authority of the agent to act should thereby be suspended for the time being ; otherwise the right of the agent would be continued beyond the period when all evidence that the principal chose to continue the authority had ceased ; for after the principal was deprived of the power to exercise any will upon the subject, there could be no assent, or acquiescence, or evidence of any kind to show that he consented that the agency should continue to exist. And, moreover, a confirmed insanity would render wholly irrevocable an authority, which, by the original nature of its constitution, it was to be in the power of the principal at any time to revoke.

It is for these reasons that we are of opinion that the insanity of the principal, or his incapacity to exercise any volition upon the subject, by reason of an entire loss of mental power, operates as a revocation, or suspension for the time being, of the authority of an agent acting under a revocable power. If, on the recovery of the principal, he manifests no will to terminate the authority, it may be considered as a mere suspension. And his assent to acts done during the suspension may be inferred from his forbearing to express dissent when they came to his knowledge. 1 *Livermore on Agency* 300, *Cairnes* vs. *Bleecker.*

Davis *v.* Lane.

The act of the agent, in the execution of the power, however, may not in all cases be avoided on account of the incapacity. If the principal has enabled the agent to hold himself out as having authority, by a written letter of attorney, or by a previous employment, and the incapacity of the principal is not known to those who deal with the agent, within the scope of the authority he appears to possess, the transactions may be held valid, and binding upon the principal. Such case forms an exception to the rule, and the principal and those claiming under him may be precluded from setting up his insanity as a revocation, because he had given the agent power to hold himself out as having authority, and because the other party had acted upon the faith of it, and in ignorance of any termination of it. They would be so precluded in the case of an express revocation, which was unknown to the other party. 2 *Livermore on Agency* 310 ; 5 *D. & E.* 215, *Salte* vs. *Field ;* 2 *Greenleaf's R.* 18. And a revocation by operation of law, on account of the insanity of the principal, cannot have a greater effect than the express revocation of the party himself. But this case is not of that character. Here there was full knowledge of the situation of the plaintiff's intestate, by Prescott, when he received the note.

The principle that insanity operates as a revocation cannot apply where the power is coupled with an interest, so that it can be exercised in the name of the agent ; for such case does not presuppose any volition of the principal at the time, or require any act to be done in his name, and is not revoked by his death.

Whether it is applicable to the case of a power which is part of a security, or executed for a valuable consideration, and thus is by its terms or nature irrevocable ; and which seems to be regarded in England as a power coupled with an interest, (10 *Barn. & Cres.* 731 ; 4 *Camp.* 272) may be a question of more doubt. 2 *Mason* 249. Such a power could not be revoked by the principal, if his sanity was continued, (2 *Livermore* 308) and any volition of his could not

Davis *v.* Lane.

alter the case. Some of the reasons, therefore, which have been adverted to, would not exist in a case of that character. But a power of that kind is to be executed in the name of the principal; and it was held, in Hunt *vs.* Rousmaniere's administrator, before cited, that the death of the principal operates as a revocation of it, for the reason that after that event no act can be done in his name, as if he himself performed it. This reason would not exist where he was still living; and perhaps he and others might in such case be precluded from setting up his insanity in avoidance of the act, on the ground that he would have had no right to interfere, if sane, and had therefore no right to insist on his insanity as an objection.

It has been held, in England, that the insanity of one partner does not operate as a dissolution of the partnership, but that object must be attained through a court of equity. *Sayer* vs. *Bennet, cited* 2 *Ves. & Bea.* 303; *Gow on Part.* [272.] But the soundness of the principle may perhaps be doubted. 2 *Ves. & Bea.* 303, *Waters* vs. *Taylor;* 15 *Johns. R.* 57, 82, *Griswold* vs. *Waddington.* It certainly could not have been applied here prior to 1832, as we had before that time no court through whose decree in equity a dissolution could have been effected. Admitting it to be correct in its fullest extent, however, it would not affect this case, for each partner has an interest, by the partnership contract, and the interest of one partner would not be terminated by the insanity of another. In making a sale, or contract, he does not act as agent, but in his own right; and the partnership name may be used by one, without any supposition that another acts, individually, or has any knowledge or volition in relation to the matter. But so long as the partnership continues, the act of one binds the others; and as it is, in its effect, the act of all the partners, it may deserve great consideration whether the insanity of one, in the absence of any stipulation to the contrary, does not operate *ipso facto* as a dissolution of the partnership itself.

The result of the view we have taken is, that the wife of the intestate had at the time no authority to dispose of this note to Prescott, and that he acquired no title to it, and had no right to receive the money. We have already held, on a former case, in this suit, that a payment to him, by the defendant, under such circumstances, could not operate to discharge the note. 8 *N. H. Rep.* 224. The instructions to the jury were erroneous; but there is no agreement in the case by which we are authorized to enter judgment for the plaintiff, and the action must, therefore, be transferred to the common pleas, for a new trial, if there is any thing further in controversy between the parties.