## DAVIS, Admr., *vs.* LANE.

F. held a note against L., the defendant, and being indebted to P., had expressed an intention of delivering the note to P. as security for the sum he owed him. Subsequent to this, F. being on his death bed, and insensible, his wife delivered the note of L. to P., and P. gave up his claim against F., and gave a note payable to F., for the balance, which was delivered to his wife. L., with a knowledge of these facts, paid the contents of the note to P.—*Held,* that as F. had never carried his intention of delivering the note to P. into effect, nor authorized any one to do it, no title passed to P., and that the payment by L. to him did not discharge the note.

D., the plaintiff, was consulted respecting the transfer to P., and advised to it. He was afterwards appointed administrator on the estate of F.—*Held,* that this advice, given when he had no authority respecting the matter, could not operate to charge him as administrator with the amount of the note against L., nor preclude him from maintaining a suit against L. to recover it.—*Held,* farther, that it was not necessary, in order to sustain such suit, that the note P. gave for the balance should first be returned to him.

ASSUMPSIT, for money had and received, for which it appeared a promissory note for $50, due from the defendant to the plaintiff's intestate, dated June, 1833, and payable in one year with interest, had been originally given.

The plea was the general issue. It appeared in evidence, that the defendant became indebted to Ambrose Foss, the

plaintiff's intestate, in June, 1833, on the note declared on, which was given for a colt, sold by Foss to the defendant. It also appeared that Foss was indebted to one Josiah Prescott, on a note for $30, on which note Theophilus Gilman was surety, and was also indebted to Prescott in the further sum of $15, for difference in the exchange of cattle. In October, 1833, Foss was taken dangerously sick, and on the day of his decease the said Prescott and Gilman called at Foss' house, and Mrs. Foss delivered to them the note due from the defendant. They took the note to Davis' house, which was near by, and cast the interest on it, and on Prescott's note and claim, and Prescott gave a note for the balance, which was about $5.00, payable to said Foss, and retained the note against the defendant, at the same time cancelling his own note and claim. The note for the balance was subsequently delivered to Mrs. Foss, wife of the deceased.

The plaintiff, who now sues as administrator, was present when the note against the defendant was delivered to Prescott, and advised to its delivery. The defendant, Lane, was also aware of the circumstances under which the note was delivered. A son of Foss testified that he heard his father say that Prescott should have Lane's note, as security for a yoke of steers which he, (Foss,) had had of Prescott, for which said note of $30 was given. Another son testified that he heard his father tell Prescott, that he was willing to give him Lane's note as security for the steers. And there was testimony that Foss, in the fall of 1833, told the witness that he had sold the colt to the defendant for $50—that he was owing Prescott, and Mr. Gilman signed the note with him, which note was due that fall, and that he was owing some other debts, and he thought he had better sell the colt to meet these claims, than to attempt to raise money in the fall, and not know where to get it.

No other evidence than the above was offered to show any authority to deliver said note, and for the exchange and transfer of it as aforesaid, except some evidence tending to show

that Mrs. Foss had been, and was, the general agent of her husband for the transaction of business. The plaintiff denied such agency, and also that any authority had been given to deliver and exchange the notes as aforesaid.

It was conceded that the conversation, testified to by the sons of Foss, took place some days prior to the delivery of the note.

It was also contended that any authority shown in the testimony, for the delivery and exchange of notes, as aforesaid, was wholly superseded by the state and condition of Foss, at the time of such delivery, and that he was at that time in the last stages of sickness, and, through the day of the delivery of said note, was entirely insensible, and incapable of transacting any business.

The jury were instructed to find the facts of the situation of Foss at the time of the delivery of said notes, and whether his situation was known to Prescott, Gilman, the defendant, and Mrs. Foss; and they were also instructed that if Foss was insensible at the time, and incapable of transacting any business, any authority as general agent in Mrs. Foss, or any other authority shown in the testimony for the delivery of the note, and exchange of the same, would be superseded and void by such state and condition of said Foss.

The jury found that Foss was entirely insensible at the time of the transfer of the note to Prescott, and that all parties concerned in the transfer and subsequent payment of the note knew that he was so.

A verdict was taken for the plaintiff, and the defendant moved for a new trial.

*Wilcox*, for the defendant. The plaintiff participated in the transaction. The estate had a claim against all concerned in it, and when he took administration he was chargeable with the amount. He cannot maintain an action against the defendant, having advised and agreed to what was done.

Foss gave consent, before he became insensible, that Pres-

cott should have the note. His wife had it before his death, for the benefit of Prescott.

Mrs. Foss was administratrix, and the plaintiff is administrator *de bonis non.* Retaining the note received, is a ratification of the contract.

At any rate, no action can be maintained until there has been a return of that note to Prescott.

*Britton, & Quincy,* for the plaintiff.

PARKER, C. J. The fact that the plaintiff was consulted, and advised to the course adopted, when he had no duty to perform, cannot charge him, when he afterwards became administrator. The evidence of the sons of Foss shows only that he expressed some intention that Prescott should have the note against the defendant, as security ; but he does not appear ever to have carried that intention into effect. This constituted no authority to any one to deliver it to him. If there had been such authority, not coupled with an interest in the matter, it could not have been executed after Foss was dead, or insensible on his death bed, of which fact all the parties had notice. Any authority in Mrs. Foss to act as general agent, it has been already settled in this case, was superseded by the situation of Foss, known as it was to her, and to all the other parties to the delivery and exchange of the note. 10 *N. H. Rep.* 156, *S. C.*

The plaintiff cannot be barred from maintaining his action, by reason of not having returned to Prescott his note against the intestate. It does not appear that it ever came to his possession. And so of the note of $5, given by Prescott, payable to the intestate.

It has been suggested that Mrs. Foss was appointed administratrix originally, this plaintiff being administrator *de bonis non,* and that the retaining of the note was a ratification of the contract. The fact that Mrs. Foss was appointed administratrix is not before us, nor any evidence relating to the

note for $5, except that such a note was given, and went into her possession. If Mrs. Foss was administratrix, and that note had been paid, by Prescott, to her, during her administration, or to the defendant, that might perhaps amount to a ratification, so as to bar this suit. The mere retaining of it by her would not seem to have that effect. It would not charge her, and more especially the plaintiff, with the amount of the note against the defendant.

*Judgment on the verdict.*