# SULLIVAN,

## BURKE EX'R OF ALLEN *v.* ALLEN.

An indorsement of a promissory note by the payee, is a contract which an in-
sane person cannot make, because he has not the power to give that consent
which the contract requires.

In an action upon a promissory note by an indorsee against the maker, insanity
in the payee and indorser at the time of the indorsement and transfer is a
valid defence.

Where, in an action upon a promissory note by the indorsee against the maker,
the defendant introduced evidence tending to show that the note had gone
into the hands of the plaintiff, as agent, and not as owner—*held*, that the
plaintiff might show the money transactions between the parties as rebutting
the presumption attempted to be raised by the defendant.

ASSUMPSIT, on a promissory note, dated January 18th,
1844, for the sum of $302,75, signed by the defendant, and
payable to one Hannah Allen or order, on demand with in-
terest annually, and by her indorsed to David Allen, the
plaintiff's testate.   Plea, the general issue.

On the trial the note declared on was produced by the
plaintiff, and upon the back of the note was the name of
Hannah Allen, in her own hand writing.

On the part of the defendant it appeared that David Al-
len, the deceased, and Samuel Allen, the defendant, were
children of Hannah Allen; that David, for several years
prior and subsequent to the date of the note, acted as an
agent of Hannah Allen, receiving and disbursing large sums

of money for her, and managing the most of her affairs. In the summer of 1848, she was taken to the Asylum for the Insane by David Allen, and remained there until her decease, about two years afterwards. An administrator has been appointed upon her estate, but he has never called upon the defendant to pay the note in question, or authorized him to defend this suit.

There was evidence that Hannah Allen was more or less insane at intervals, as early as the summer of 1847, but she was not at any time under guardianship.

The court ruled that the defendant could not be permitted to show the insanity of Hannah Allen, at the time of her indorsement of the note, as a defence to the action.

The defendant introduced a witness who testified that in the fall of 1846 he heard David Allen ask Hannah Allen to indorse the note now in suit, and she objected, saying that she did not want Samuel, the defendant, to pay the note; but David said, all he wanted with the note was to raise money to pay her debts, and that he would give the note back again; that he wanted to pledge it as collateral security.

The court then permitted the plaintiff to prove the state of the accounts and money transactions between Hannah Allen and David Allen, and down to the summer of 1848, when she was carried to the Asylum, in order that the jury might better determine whether the note probably went into the possession of David Allen as agent or owner.

The jury returned a verdict for the plaintiff, which the defendant moved to set aside, because of the ruling of the court as to the insanity of Hannah Allen, and the admission of the evidence as to the state of the accounts.

*A. & S. H. Edes*, and *Cushing*, for the defendant.

The evidence to show the insanity of the indorser, at the time of the indorsement, should have been admitted.

The negotiation of a note by indorsement is a contract,

and requires competent contractors; and an insane person
is not competent to make a contract. It is a familiar prin-
ciple that a contract must be the act of a consenting mind.
If the party be not of sound mind, so as to be capable of
giving a rational consent, there can be no contract. Chit.
on Con. 129, note a.; 1 Black. Com. 433; 3 Bac. Ab. 540;
1 Bouvier's Inst. 229; *Davis* v. *Lane*, 10 N. H. Rep. 150;
*True* v. *Ranney*, 1 Foster's Rep. 52; *Browning* v. *Bean*, 2
Phill. 69; *Seaver* v. *Phelps*, 11 Pick. 304; *Lang* v. *Whid-
den*, 2 N. H. Rep. 438.

If the contract of Hannah Allen was null and void, then
the plaintiff's testate could take nothing by the indorsement.
He was not an innocent indorsee; he had been agent for
the indorser long before the time of indorsement, and trans-
acted her business, and knew her state of mind; and it is
fair to presume that he intended to defraud the other heirs.

The state and condition of the mind of a party is proved
like other facts, to the jury; and evidence of the state of
mind, both before and after the act done, is admissible. 2
Greenl. on Ev. 367.

It would seem, then, that the indorsement of a note by
an insane person, is a mere nullity and void, and may be
taken advantage of by any one whose interest it is to do it.
But if it should be held otherwise, and that such a contract
is not void but voidable only; and that the maker of this
note could not set up this defence; then we contend that
the defendant, being heir at law of the indorser, was inter-
ested in having the contract avoided; that the amount of
the note should go to increase the estate of the deceased in-
dorser, his mother, out of which he is to have his distribu-
tive share. In the character of heir at law of the deceased
insane indorser, he would surely be entitled to make this de-
fence. He is fairly before the court in that capacity.

Besides, should the administrator of the deceased indorser
bring a suit on the note against the maker and avoid the
indorsement by reason of insanity, would a judgment in the

present suit against the maker be a bar to such. suit; the contract of indorsement being void between those parties, and the judgment being between other parties?

There seems to be some conflict in the decisions in the English courts upon the point whether the contracts of insane persons shall be held void or voidable only; but we think they are explainable when the technical use of the word lunatic is considered. The cases where they are held voidable, are those in which the person has been decreed by a court of chancery to be a lunatic from imbecility of mind and incapacity to manage his business, and not where real insanity existed. If actual insanity existed they have been held void. *Baxter* v. *Earl of Portsmouth*, 7 D. & R. 614; *Dane* v. *V'countess Kirkwall*, 8 Carr. & P. 679; *Matter of James Barker*, 2 Johns. 233; *Gibson* v. *Joyes*, 6 Ves. 266; 3 Carr. & P. 30; *Ridgman* v. *Dawson*, 8 Ves. 64; 12 Ves. 445; *In re Holmes*, 4 Russell, 182; *Ex parte Atkinson*; *In the matter of Parkinson*, 1 Jacob, 333.

The evidence as to the state of the money matters and accounts between Hannah Allen and the plaintiff's testate should not have been admitted. It was immaterial, and if the balance was found in his favor it could give David Allen no title to the note. And any inference which might be drawn by the jury as to "the possession of the note by David, either as agent or owner," from a statement of the accounts between them, subsequent to the indorsement, was only calculated to mislead the jury by presenting an issue foreign to the case.

*Burke*, for the plaintiff.

Upon the case as stated, two questions arise: First, ought testimony tending to show the insanity of Hannah Allen, the payee and indorser of the note, at the time of the indorsement, to have been admitted on the trial? Second, ought the plaintiff to have been permitted to prove the state of the accounts and money transactions between Hannah

and David. Allen, in order to enable the jury to determine the question whether or not the note on which this action is brought went into the hands of David as agent or owner?

I. With regard to the first question, it is believed that it was not proper to allow the defendant to show the insanity of Hannah Allen under the circumstances, and that the ruling of the court was correct on this point; and for the following reasons:

1. Insanity, like infancy, is a personal defence. It can be made only by the *non compos* himself, or his personal representative.

Lunacy or insanity may be insisted on by the *non compos* himself, or his personal representatives, to avoid contracts which have been entered into while laboring under insanity, and by which he has been defrauded and imposed upon. But the authorities give no instance in which insanity has been permitted as a defence by other persons, not representing the estate of the *non compos*.

It would be against the true theory and spirit of the law relating to infants and lunatics, if their disabilities or infirmities could be made available by others, against their own liabilities. Chitty on Bills, 18, and cases cited, (Am. Ed.) 1842; Stock on *non compos mentis*, 20 to 30.

The incapacity of one party to a contract does not affect the responsibility of other parties to each other. *Knox* v. *Reisell*, 1 Miles, 294.

2. The contracts of lunatics, like those of infants, are not void but voidable. Such seems to be the general doctrine.

The contracts of insane persons are not generally absolutely void but voidable. *Wilde*, J., in *Seaver* v. *Phelps*, 11 Pick. 304, 6.

The grants of infants and persons *non compos*, are parallel both in law and reason. *Thompson* v. *Leach*, 3 Mod. 310.

Except in the instance of indorsement by a *feme covert*,

it seems that although a bill, &c., be drawn, indorsed and accepted by a person incapable of binding himself, it will, nevertheless, be valid against all other competent parties. Chitty on Bills, 24.

If an infant draw and indorse a bill, it is good in the hands of the indorsee. *Haley* v. *Lane*, 2 Atkins, 182. The acceptor of a bill cannot avail himself of the infancy of the drawer as a defence in an action brought by the indorsee. *Taylor* v. *Crocker*, 4 Esp. N. P. 187. A lunatic can take by fine. He can suffer a common recovery. The grant of copy-hold estates through his steward are not void or directly voidable. Feoffments by a *non compos mentis* are not void but voidable. Stock on *non compos*, 23, 25.

Thus the contracts of persons *non compos mentis* seem to be put upon the same ground, substantially, as those of infants. Therefore the contract between the indorser of a promissory note, if insane, and the indorsee, would be good until avoided by the *non compos* himself. The payer certainly could not avail himself of the lunacy of the indorser as a defence. Such seems to be the whole tenor of the doctrine laid down by the author last cited.

The doctrine that the maker may show the insanity of the payee in a suit brought against himself by the indorsee, rests upon the principle that the payee is incapable of contracting. But if the action were brought by the payee, could the maker set up the insanity of the payee as a defence against the note ? Could he thus take advantage of a defence which is intended only as a protection to the payee ? And would he not be estopped by his contract from availing himself of such a defence ? But in respect to bills and notes, unless it were known and taken advantage of by the plaintiff, so that there is no fraud in him, a defendant cannot in general set up his own insanity in defence. 1 Stephens *Nisi Prius*, 809.

3. The defendant is estopped from denying the power of Hannah Allen to indorse the note in controversy. It is

a principle applicable to all negotiable securities, that a person shall not dispute the power of another to indorse such instruments when he asserts by the instrument which he issues to the world that the other has such power. *Bailey*, J., in *Drayton* v. *Dole*, 2 Barn. & Cress. 299.

4. The principle contended for by the defendant is against the general policy of the law with regard to commercial or negotiable instruments. If the defence of lunacy of the indorser, at the time of the indorsement of a bill or promissory note, may be set up by the maker in a suit to recover its contents, it would violate the great principle which protects commercial paper in the hands of an innocent indorsee. Suppose David Allen had passed the note out of his hands to an innocent third person, could the maker, a party to the note, doing his share towards giving a currency in the commercial world, when sued for its recovery, shelter himself behind the plea that the indorser was insane? Between him and the subsequent holder of the note, there is no ground for favor or equity in his behalf. He owes the note and must pay it to somebody. The question who shall suffer by the insanity of the payee does not arise, so far as he is concerned. It can arise only between the insane indorser and a subsequent holder. And if the misfortune should fall anywhere, it should be on the lunatic himself. Certainly it should, as between him and an innocent holder of the note. It is against the spirit and policy of the law to throw any obstacles in the way of the free circulation of commercial paper.

5. If the defendant can show the lunacy of the indorser in defence, before he does it, the parties to the indorsement, Hannah and David Allen, must be placed in *statu quo* as before the indorsement. It has recently been held that a *bona fide* contract made with a lunatic who was apparently sane, cannot be rescinded by him or his representatives, unless the parties can be placed in *statu quo*. 1 Parsons on Contracts, 312.

The defendant in an action on a promissory note is not allowed to contest the plaintiff's title to sue, except for the purpose of protecting himself against a subsequent suit, in the name of a person having a better title, and who has not acquiesced in the suit commenced. But when it appeared that the person who was claimed by the defendant to be the real owner of the note had full knowledge of all the proceedings and had not in any manner asserted any right to interfere, it was held that a payment of the judgment to the plaintiff, if permitted to the real owner of the note, would be a sufficient protection to the defendant. *Hackett* v. *Kendall*, 23 Vt. Rep. 275.

6. Lunacy cannot be shown as a defence under the general issue. The general rule is that sanity is to be presumed until the contrary be proved. 2 Kent's Com. 562. Lunacy must be pleaded. *Alcock* v. *Alcock*, 3 Manning & Granger, 268. Evidence of imbecility of mind cannot be given under a plea that the defendant did not make a promissory note. 1 Stephens *Nisi Prius*, 810.

Upon the question of lunacy the defendant has cited two cases from the New Hampshire Reports; *True* v. *Ranney*, 1 Foster's Rep. 52; and *Lang* v. *Whidden*, 2 N. H. Rep. 435. With regard to these cases it is sufficient to say, that they assert as a general principle that lunacy may be set up as a protection against imprudent or improper contracts by the lunatic himself or his personal representatives. They do not interfere with any principle contended for by the plaintiff.

The case of *Seaver* v. *Phelps*, 11 Pick. 304, cited by the defendant, is also relied on by the plaintiff. It asserts the sound, judicious and beneficent doctrine that the contracts of lunatics, like those of infants, are voidable and not void; thus enabling courts of justice to hold the other party to a strict performance of them when beneficial to the lunatic, and to avoid them when injurious.

II. With regard to the second question raised in the

case, it is believed that proof of the state of the accounts between Hannah and David Allen was, under the circumstances, clearly admissible. The defendant had first been permitted to prove facts tending to show that David Allen had been the agent of Hannah, and in that capacity had received and disbursed large sums of money, in order to afford ground for inference by the jury that the note in controversy went into his hands as the property of Hannah Allen, and not by purchase. To rebut this presumption the court very properly permitted the plaintiff to prove the state of accounts between Hannah and David. In this point of view the testimony was clearly admissible.

EASTMAN, J. Whatever may have been the doctrine formerly in regard to insanity as a valid defence against an action upon the contract of a party, it seems to be now well settled that the contracts of idiots and insane persons are, as a general rule, not binding either in law or equity. The rule that a man shall not be permitted to stultify himself is now entirely exploded. Being bereft of reason and understanding, he is considered incapable of consenting to a contract, or doing any other valid act. *Yates* v. *Bean,* 2 Strange, 1104; *Webster* v. *Woodford,* 3 Day, 90; *Thompson* v. *Leach,* 3 Mod. 310; Buller's *Nisi Prius,* 172; *Mitchell* v. *Kingman,* 5 Pick. 431; *Seaver* v. *Phelps,* 11 Pick. 304; *Lang* v. *Whidden,* 2 N. H. Rep. 435; *True* v. *Ranney,* 1 Foster's Rep. 52. See, also, *Davis* v. *Lane,* 10 N. H. Rep. 156.

In *Seaver* v. *Phelps,* 11 Pick. 304, which was trover to recover the value of a promissory note pledged to the defendant by the plaintiff when the latter was insane, it was held that it was not a legal defence that the defendant at the time when he took the pledge, was not apprised of the plaintiff's being insane, and had no reason to suspect it, and did not overreach him nor practice any fraud or unfairness.

The court said, the fairness of the defendant's conduct cannot supply the plaintiff's want of capacity.

But it appears to be agreed that when goods have been supplied to insane persons which were necessaries, or which were suitable to their station and employment, and which were furnished under circumstances evincing that no advantage of their mental infirmity was attempted to be taken, and which have been actually enjoyed by them, they are liable in law as well as equity, for the value of the goods. 2 Greenl. on Ev. § 369, and cases cited.

This exception, however, does not impair the general principle that the contracts of insane persons are invalid; and had the present action been brought against Hannah Allen, the payee of the note, to charge her as indorser, she could have set up insanity at the time of the indorsement, and if proved, it would have been a good defence. The contract would be one that an insane person would be incapable of making. So far the authorities are all agreed. But can the maker of the note interpose such a defence? Can he be permitted to show in bar of the suit, that the payee and indorser was, at the time of the indorsement, insane?

If an insane person can do no act whatever that shall bind him or his representatives, as some of the books show, and if all of his acts are absolutely void, then it would appear plain that the defence can be set up; for the indorsement could effect nothing in any way. It would be simply a void act. *Story,* in speaking of persons *non compos mentis,* says that it is a rule not merely of municipal law, but of universal law, that the contracts of all such persons are utterly void. Story on Prom. Notes, § 101.

But the authorities generally do not go to that extent, and they treat the contracts of insane persons as voidable, not absolutely void. *Seaver* v. *Phelps,* 11 Pick. 305: 2 Greenl. on Ev. §§ 369, 370; *Dane* v. *Kirkwall,* 8 Carr. & Payne, 679; *Richardson* v. *Strong,* 13 Iredell, 106.

In *Price* v. *Barrington*, 7 Law and Eq. Rep. 254, a *quære* is suggested, whether a conveyance executed by a lunatic is absolutely void, in the absence of notice and fraud; and the Lord Chancellor, in speaking of the question, says that it is not necessary to pronounce a decision upon the abstract general question, whether, *in the present state of the law*, a conveyance executed by a lunatic is absolutely void.

There is a distinction to be found in some of the cases, between the contracts of lunatics and those of insane persons; the term lunatic embracing, in such cases, persons of imbecile mind, as well as those of disordered intellect. But that distinction we need not trace, as in the present case the proposition was to show insanity in the payee.

If we are to treat the contracts of an insane person as standing upon the same ground as those of infants, as is contended in argument, and voidable no further than theirs, the weight of authority appears to be, that the maker of a note cannot, in a suit by an indorsee, avail himself of the defence of infancy in the payee; and that such a defence is only personal to the infant interposing it. *Story* says, that it seems now to be well settled, that the indorsee of a note, by such transfer and indorsement, acquires a good and valid title to the note, against every other party thereto, except the infant, since it is not a void, but a voidable title only. Story on Prom. Notes, § 80. Chitty regards the question as to infant indorsers as not fully settled, though his opinion appears to incline to that of Story. Chitty on Bills, 19, 20.

The following cases, among others, hold the same doctrine. *Taylor* v. *Crocker*, 4 Esp. 187; *Haly* v. *Lane*, 2 Atkins, 182; *Nightingale* v. *Withington*, 15 Mass. Rep. 272. In the last case, *Parker*, C. J., says "an infant may indorse a negotiable promissory note, or a bill of exchange, made payable to him, so as to transfer the property to the indorsee, for a valuable consideration. If an action should be brought against the infant as indorser, for default of payment by the promiser, without doubt he may avoid such action by the

plea of infancy. But that is a personal privilege, which none but himself can set up, in avoidance of any contract made in his favor."

But while we think that, to hold all contracts whatsoever of an insane person to be absolutely void, is carrying the doctrine too far, we also think that there should be a distinction made between the contracts of a minor and those of an insane person. The contracts of minors are held voidable for the reason that they are supposed to lack that discretion, prudence and experience, which age gives ; and for the further reason that their parents being legally bound to support them are also entitled to their time and service. But with a person who is really insane, there is not the capacity to compare, reflect, decide, judge; there is wanting the power to understand the consequences of the acts done, and in many instances to know what is done. A minor who indorses a note payable to himself and receives the money therefor from the indorsee, understands fully what he is doing ; and although the act may be indiscreet and one which his natural guardian will disapprove, and although by such indorsement he may not unavoidably bind himself, yet if the payer finds the note in the hands of the indorsee, properly indorsed, he may well suppose that it has been done by the assent of the father, and payment made without notice from the payee will protect him. Having contracted with the minor to pay the amount of the note to him or his order, he cannot deny the contract which he has made, and must be held to pay according to its terms, either to the minor or his order. The minor alone can take advantage of his minority. Moreover the indorsee may be entirely ignorant of the minority, and an innocent holder of the note. The maker, also, may not know of the minority.

But with an insane person the matter is very different. He understands not the effect of indorsing the note, nor whether he is receiving a valuable consideration for the same or not. He may not even know that he is parting with his

property, and an indorsee who should take a note under such circumstances would be guilty of fraud.

If at the time the note is given the payee should be insane, and the maker should be aware of the fact, he would be bound in equity and good conscience not to pay it to an indorsee, till he had ascertained that he was the rightful and legal holder. Or if when it is given he should not be aware of the existence of the insanity, or if after it should be given the payee should become insane, the reason is equally strong why he should not pay it without due inquiry, if he had notice of the insanity. And if, under such circumstances, he ought not to be protected in paying the note to the indorsee, then it would seem to follow as a legitimate consequence, that he should be permitted to show the existence of insanity at the time of the indorsement, in defence of an action brought by the indorsee.

There might, perhaps, be an answer to such a defence; as by showing that the transfer was made by the authority of a guardian, if there should be one. But the fact that there can be a good replication made to a plea involving such a defence, does not show the plea in itself considered, to be bad. And it appears to us that the due protection of the rights of an insane person requires that this defence should be permitted; for unless it is, then payment to an indorsee must be good, and a judgment in his favor upon the note must be a valid bar to any suit upon the same by the insane person or his representatives.

If the maker of a note pays it to one who is not the rightful holder, it will be no defence to an action by him who is. *Davis* v. *Lane*, 8 N. H. Rep. 224. But if he is precluded by law from setting up a special defence against the holder, the existence of that defence cannot be shown in a suit against him by another party, as a reason why he should be chargeable. So if the maker cannot show insanity in the indorser at the time of the transfer, in defence of a suit by the indorsee, then insanity cannot be shown by the in-

dorser or his representatives as a reason why the note should be paid to him instead of the indorsee, and the act of indorsement would be made legal and the *non compos* would be unprotected from the effects of his indorsement.

There is another view that may be taken of this question. An indorsee of a promissory note, to sustain his action against the maker, must show the making of the note and a due indorsement and transfer; but if the indorser is insane and incapable of making a legal transfer, then the plaintiff must fail to make his proof. He must fail to sustain the allegations of his declaration. He cannot show an indorsement, which is a requisite essential to his recovery.

This precise point has been so settled in Massachusetts. *Peaslee* v. *Robbins*, 3 Met. 164. In delivering the opinion in that case, *Wilde*, J., says: "the plaintiff is bound to show a legal transfer of the note, by proof of the hand writing of the indorser; and it follows as a necessary consequence that the defendant must be allowed to impeach the plaintiff's title to the note, by showing that the indorsement was void. Evidence, therefore, of the indorser's mental incapacity to make a valid contract, at the time he indorsed the note, was material evidence. All the evidence of the indorser's incapacity, before and after the indorsement, was properly submitted to the jury, to enable them to decide correctly on the question of his incapacity, at the time of the indorsement."

We are aware that in holding evidence of the payee's insanity at the time of the indorsement and transfer to be competent as showing a defence for the maker, we interfere to some extent with the principles governing the free circulation of negotiable paper. But we think that greater wrong would be done to the unfortunate insane by excluding the defence, and thereby holding payment to any one who might be possessed of the note to be good, than mischief to community from any infringement upon the general doctrine governing the transfer of negotiable paper, by receiving it.

The counsel for the plaintiff has taken the position that this defence cannot be shown under the general issue. But that exception was not taken in the court below, and cannot therefore be insisted upon here. It would seem, also, that the position itself is unsound, and that insanity may be pleaded specially, or given in evidence under the general issue. *Mitchell* v. *Kingman,* 5 Pick. 431; Gould's Pleading, ch. 6, § 38.

We discover no error in the ruling of the court admitting the evidence of the state of the accounts and money transactions between the plaintiff's testate and the indorser. The objection was not to the kind of evidence introduced to show the state of their dealings, but to the admissibility of the dealings themselves. And as it was in its nature rebutting, and in answer to a new position of the defendant, it was competent.

But the ruling excluding the evidence of insanity was wrong, and for its rejection the verdict must be set aside, and a

*New trial granted.*