ESTATE OF JOHN DIERKS, DECEASED, HENRY DIERKS AND MARVIN MARGOLIS, EXECUTORS, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT [1]

Docket No. 90547. Filed June 14, 1963.

*Daniel H. Greenberg*, for the petitioners.
*W. T. Holloran*, for the respondent.

### OPINION

FAY, *Judge:* On December 10, 1962, this Court entered its decision in the above docket pursuant to an agreement of the parties filed with this Court on November 30, 1962. On February 13, 1963, the executors of the estate of John Dierks filed a motion to vacate the decision of this Court on the ground that the attorney who signed the stipulation on behalf of John Dierks, upon which the decision of this Court was ultimately predicated, was not authorized to act on behalf of John Dierks.

The facts which precipitated this motion may be stated as follows:

On October 5, 1960, respondent issued a statutory notice of deficiency to John Dierks, hereinafter referred to as the decedent, a resident of New York, which notice asserted certain deficiencies in income

---

[1] On February 13, 1963, a motion was filed by the executors under the last will and testament of John Dierks, deceased, to change the title of this case from "John Dierks, Petitioner, v. Commissioner of Internal Revenue, Respondent" to "Estate of John Dierkes, Deceased, Henry Dierks and Marvin Margolis, Executors, Petitioners, v. Commissioner of Internal Revenue, Respondent." The motion was granted by this Court on May 3, 1963.

taxes and additions to tax for the years 1949 to 1955, inclusive. A petition contesting respondent's adjustments was filed by the decedent with this Court on January 5, 1961. On January 11, 1961, decedent executed a power of attorney which provided, in part, as follows:

KNOW ALL MEN BY THESE PRESENTS, that I, JOHN DIERKS, residing in the County of Manhattan, State of New York, City of New York, at 208 East 31st Street do hereby make, constitute and appoint, SABINO J. BERARDINO, his agents and attorneys, my true and lawful attorney to appear for me and represent me before the Treasury Department, in connection with any matter involving federal taxes for the years 1949, 1950, 1951, 1952, 1953, 1954 and 1955 in which I am a party, giving my said attorney full power to do everything whatsoever requisite and necessary to be done in the premises, and to receive refund checks, to execute waivers of the statute of limitations, and to execute closing agreements, as fully as the undersigned might do if done in his own capacity, with full power of substitution and revocation, at any time subsequent to the date hereof and prior to the revocation hereof.

It is requested that a copy of all communications, regarding any matter in which the said attorney is hereby authorized to act be addressed to SABINO J. BERARDINO, ESQ., at 32 Broadway, New York 4, New York.

All powers of Attorney for this purpose heretofore filed or executed are hereby revoked.

The power of attorney was executed in New York.

Subsequently, representatives of the Internal Revenue Service and Berardino, the attorney referred to in the aforementioned power of attorney, undertook negotiations with a view toward settlement of the case.

On November 28, 1962, decedent lapsed into a coma and remained in this state until he died on December 3, 1962.

On November 30, 1962, a stipulation of settlement in connection with decedent's tax liabilities was signed by Berardino and a representative of the Internal Revenue Service and, as previously noted, was filed with this Court on that day. The stipulation was executed in New York. At the time the stipulation was signed, Berardino and representatives of the Internal Revenue Service were aware that the decedent was in a coma.

The movants contend that when the decedent lapsed into a coma on November 28, 1962, the power of attorney given to Berardino was revoked or suspended, and that consequently his subsequent execution of the settlement stipulation on November 30, 1962, constituted an unauthorized act.

If the settlement stipulation was not executed by the decedent or by one duly authorized to act on his behalf, it is of no effect and the decision of this Court entered pursuant to such a stipulation must be vacated.

The question we must resolve, therefore, is whether the authority of Berardino to execute a settlement stipulation on behalf of the decedent was revoked or suspended by operation of law during the period the decedent was in a comatose condition. The solution to such a question

depends upon State law, which in this instance would be the law of the State of New York. Restatement, Conflict of Laws, secs. 333, 342, 344, and 345; 2 Beale, Conflict of Laws, 1193 (1935); *New York Life Ins. Co.* v. *Chapman*, 132 F. 2d 688 (C.A. 8, 1943); *Anthony P. Miller, Inc.* v. *Needham*, 122 F. 2d 710 (C.A. 3, 1941).

At one time the courts of New York adhered to the view that insanity does not revoke a power of attorney unless the insanity is established by an inquisition. *Wallis* v. *Manhattan Co.*, 2 Hall 495, 2 N.Y. Super. 532 (1829). The *Wallis* rule was challenged in 1898 in the case of *Merritt* v. *Merritt*, 50 N.Y. Supp. 604 (1898), where the court was asked to decide:

whether one who deals with a lunatic, knowing him to be such at the time, is protected in his dealing, and acquires rights against the lunatic, because the transaction is had with a person who holds a power of attorney made by the lunatic at a time when he was sane.

The New York court in rejecting its earlier rule and holding that the power of attorney was revoked or suspended during the period of lunacy said:

The question was presented to the highest Court of New Hampshire in the case of *Davis* v. *Lane*, 10 N.H. 156, in which it was held that the authority of an agent ceases or is suspended by the insanity of the principal. The argument is so well put by Chief Justice Parker, in delivering the opinion of the court, that we quote it at length, as a most admirable and succinct statement not only of the rule, but of the reason for it:

"We are of opinion, however, that the authority of the agent, where the agency is revocable, must cease or be suspended by an act of Providence depriving the constituent of all mind and ability to act for himself, and that this doctrine can be sustained by very satisfactory principles. An authority to do an act for and in the name of another presupposed a power in the individual to do the act for himself, if present. The act to be done is not the act of the agent, but the act of the principal; and the agent can do no act in the name of the principal which the principal might not himself do if he were personally present. The principal is present by his representative, and the making or execution of the contract, or acknowledgment of a deed, is his act or acknowledgment. But it would be preposterous, where the power is in its nature revocable, to hold that the principal was, in contemplation of law, present, making a contract or acknowledging a deed, when he was in fact lying insensible upon his deathbed, and this fact well known to those who undertook to act with and for him. The act done by the agent, under a revocable power, implies the existence of volition on the part of the principal. He makes the contract. He does the act. It is done through the more active instrumentality of another, but the latter represents his person, and uses his name. Further: Upon the constitution of an agent or attorney to act for another, where the authority is not coupled with an interest, and not irrevocable, there exists at all times a right of supervision in the principal, and power to terminate the authority of the agent at the pleasure of the principal. The law secures to the principal the right of judging how long he will be represented by the agent and suffer him to act in his name. So long as, having the power, he does not exercise the will to revoke, the authority continues. When, then, an act of Providence deprives the

principal of the power to exercise any judgment or will on the subject, the authority of the agent to act should thereby be suspended for the time being; otherwise, the right of the agent would be continued beyond the period when all evidence that the principal chose to continue the authority had ceased; for, after the principal was deprived of the power to exercise any will upon the subject, there could be no assent or acquiescence, or evidence of any kind to show that he consented, that the agency should continue to exist. And, moreover, a confirmed insanity would render wholly irrevocable an authority which, by the original nature of its constitution, it was to be in the power of the principal at any time to revoke. It is for these reasons that we are of opinion that the insanity of the principal, or his incapacity to exercise any volition upon the subject, by reason of an entire loss of mental power, operates as a revocation, or suspension for the time being, of the authority of an agent acting under a revocable power."

The rule laid down in this case is adopted by Judge Story. Story, Ag. § 481. See, also, *Refining Co.* v. *MacMahon* 38 N.J. Law, 536.

The reasoning of these cases is, it seems to us, unanswerable, and the principle established by them should be adopted as the law applicable to this class of cases; and it must be held that, when one undertakes to deal with an agent having a written power of attorney, he, equally with the agent, knowing of the insanity of the principal, the transaction thus made has no more weight than if the transaction had been directly with the insane principal himself.

Since the rule of *Davis* v. *Lane*, 10 N.H. 156 (1839), i. e., that the insanity of the principal *or his incapacity to exercise any volition upon the subject by reason of an entire loss of mental power* operates as a revocation or suspension of the authority of an agent acting under a revocable power, was adopted by the court in *Merritt* v. *Merritt*, *supra*,[2] it is the rule which this Court must apply in deciding the issue raised in the instant proceeding.

In the case before us the decedent was in a coma at the time Berardino, ostensibly acting pursuant to the power of attorney granted him by decedent, signed the stipulation of settlement. Furthermore, Berardino and respondent's representatives were aware of the decedent's condition at the time the settlement stipulation was signed by them.

Thus, it would appear that although the decedent was not insane at the time his attorney exercised his power of attorney, the decedent, because of his comatose condition, was incapable of exercising any volition with regard to the actions of Berardino and the settlement of his tax case. Under such circumstances and since New York law does not require as a condition for terminating or suspending the authority of an agent by operation of law that the principal be insane but merely requires that the principal be incapable of acting because of a loss of mental power, we are of the opinion that the power of attorney given to Berardino was suspended or revoked as of No-

---

[2] *Merritt* v. *Merritt,* 50 N.Y. Supp. 604 (1898), was followed in *McNerney* v. *Aetna Life Ins. Co.,* 130 N.Y.S. 2d 152 (1954), affd. 127 N.E. 2d 79 (1955) ; *Application of Lanham,* 144 N.Y.S. 2d 401 (1955).

vember 28, 1962, the date the decedent lapsed into a coma.[3] Consequently, we hold that the settlement stipulation filed with this Court on November 30, 1962, was not signed by decedent or one authorized to act on his behalf, and was a nullity, *ab initio*. Petitioners' motion to vacate the decision of this Court is granted.

---

[3] See and compare *Clark Car Co.* v. *Clark*, 11 F. 2d 814 (D.C. Pa. 1925). In this case, the principal was suffering from an intestinal disease which caused him considerable pain and because of its side effects was affecting his mind. The principal decided to go to a sanitarium, and on the day he was to be admitted he executed a power of attorney and delivered it to one of his employees. Sometime in the early part of November 1921, the principal lapsed into a coma and remained in this condition until December 1921. On November 17, 1921, the employee acting under the power of attorney transferred the principal's assets to a corporation in return for the corporation's stock. All of the parties to the transfer were aware of the principal's condition.

The court found as a fact that at the time the transfers were made the principal was mentally incompetent to transact business as he lay in a state of coma. The court then went on to hold that his attorney had no power to act under the power of attorney when the principal became mentally incompetent, citing *Davis* v. *Lane*, 10 N.H. 156 (1839).

On appeal, the court's holding with respect to the principal's incapacity was held to be moot since the power of attorney was in any event not broad enough to permit the acts attempted by the agent. *Lanahan* v. *Clark Car Co.*, 11 F. 2d 820 (C.A. 3, 1926).