(27 App. Div. 208.)

### MERRITT et al. v. MERRITT et al.

(Supreme Court, Appellate Division, First Department. March 25, 1898.)

AGENT OF INSANE PRINCIPAL—AUTHORITY.

     When one undertakes to deal with an agent having a written power of attorney, and he and the agent know of the insanity of the principal, the transaction thus made has no greater weight than if it had been directly with the insane principal himself.

Appeal from special term, New York county.

Action by Helen S. Merritt and another against John Merritt, executor of Hannah B. Merritt, and others. From a judgment for plaintiffs, defendants appeal. Reversed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY,. O'BRIEN, and INGRAHAM, JJ.

De B. Wilmot, for appellants.
Delos McCurdy, for respondents.

RUMSEY, J. The action was brought to foreclose a mortgage executed in the name of Hannah B. Merritt, the testator, on the 26th day of May, 1891, by George Merritt, her attorney in fact. The mortgagee was one William Post. The bond and mortgage were afterwards assigned to the plaintiffs, who, it is claimed, gave no consideration therefor. The defense was that at the time of the execution of the mortgage Hannah B. Merritt was in feeble bodily health, and had wholly lost her mind, and was non compos mentis, and that that fact was known to Post when he took the mortgage, and also known to the plaintiffs. Upon the trial the plaintiffs proved a power of attorney to George Merritt, which was executed by Hannah B. Merritt in the year 1871, and then proved the bond and mortgage, made in the name of Hannah B. Merritt by him as attorney, and the default, and then rested. The defendant thereupon undertook to prove the facts alleged in his defense, which has been adverted to; but his evidence in that regard was excluded, and he was not permitted to prove the mental condition of Hannah Merritt at the time when this mortgage was executed or that Post knew that she was non compos mentis. To these rulings he took proper objections and exceptions, and the question presented is only whether one who deals with a lunatic, knowing him to be such at the time, is protected in his dealing, and acquires rights against the lunatic, because the transaction is had with a person who holds a power of attorney made by the lunatic at a time when he was sane.

There is no doubt that if this transaction had been had between Mr. Post and Hannah B. Merritt herself, she then being non compos mentis, he would have acquired by it no contractual rights whatever, and his only remedy for the money which he advanced would be to recover it back again, if it was advanced in good faith for the benefit of Mrs. Merritt, or, perhaps, to be subrogated to the ownership and right to enforce the securities which it is claimed this mortgage was used to take up. Sceva v. True, 53 N. H. 627; Rhodes v. Rhodes, 44 Ch. Div. 94. The lunatic stands in this regard in the same condition as an infant. Seaver v. Phelps, 11 Pick. 304. But, before he could assert such rights, he would be bound to make it appear that the advance was made in good faith, for the benefit of the lunatic or her estate; and, in the absence of that proof, he would certainly have no rights whatever. Even with that proof in the case, it is very doubtful whether he would be permitted to rely upon the mortgage which he made as a ground of recovery. A lunatic cannot contract, and one only acquires rights against him or his estate where he has, for the benefit of the lunatic, advanced money or done services; and then he is permitted to recover, not the amount which the lunatic has agreed to pay, but only the actual amount of money advanced or the reasonable value of the property or services furnished.

A security made by the lunatic or the infant for his repayment cannot be enforced. These rules are well settled where a contract made with a lunatic or an infant lies at the foundation of a cause of action. Does one who deals with the lunatic through an agent acquire any better right than if he dealt with the lunatic in person? The learned justice who decided this case at the special term was of the opinion that he did. The argument was that the power of attorney given by Mrs. Merritt when she was sane was not revoked by her lunacy, and therefore the person to whom it was given had the same authority to act in her name after as before her lunacy. This contention undoubtedly has some support in the text writers, and in at least one reported case. It is said by Chancellor Kent that the authority of an agent may be revoked by the lunacy of a principal, but the better opinion would seem to be that the fact of the existence of the lunacy must have been previously established by inquisition before it could control the operation of the power. 2 Kent, Comm. 645. To establish this proposition the author cites the case of Wallis v. Manhattan Co., 2 Hall, 495, decided at an early day by the superior court of the city of New York, which at that time was composed of Chief Justice Samuel Jones and Judges Oakley and Hoffman. That was an action brought to recover from the Manhattan Company the balance of the account which the plaintiff had remaining in that bank. The question to be determined by the court was whether the plaintiff was entitled to interest on his deposit. To authorize the recovery of that, the plaintiff attempted to show a previous demand for the deposit, and a refusal to pay. It appeared that at the time of the demand the plaintiff was insane, but before his insanity he had made a written power of attorney to a person who, during the insanity, endeavored to draw out the amount of the deposit. The insanity was known both to the agent and to the cashier of the bank, who refused to pay the checks drawn by the agent unless the original power of attorney should be deposited with the bank. This the agent refused to do, and for that reason the checks were not honored. After the restoration of the plaintiff to health, he brought an action for the balance of his account and interest, basing his right to interest on the demand which had been made by the attorney in his name. The court held that he was entitled to recover interest, because the power of attorney was not revoked by his lunacy, and the cashier had waived any objections to it by offering to cash the checks drawn pursuant to it upon a condition which did not involve the objection that the principal was insane. The case has been regarded, and undoubtedly is, an authority for the proposition for which it is cited by Kent. But, in spite of the decision in that case, and the undoubted eminence of the judges by whom it was made, we are not satisfied that it is a correct statement of the law. Indeed, the learned commentator himself seems to have some doubt with regard to it, because, in a subsequent portion of the same page, in which he is treating of the effect of the lunacy of the principal upon the power of attorney, he says that insanity does not operate as a revocation if the agent acts under a written power

or a previously acknowledged authority, "and the insanity be unknown to the party." 2 Kent, Comm. 645. The question was presented to the highest court of New Hampshire in the case of Davis v. Lane, 10 N. H. 156, in which it was held that the authority of an agent ceases or is suspended by the insanity of the principal. The argument is so well put by Chief Justice Parker, in delivering the opinion of the court, that we quote it at length, as a most admirable and succinct statement, not only of the rule, but of the reason for it:

"We are of opinion, however, that the authority of the agent, where the agency is revocable, must cease or be suspended by an act of Providence depriving the constituent of all mind and ability to act for himself, and that this doctrine can be sustained by very satisfactory principles. An authority to do an act for and in the name of another presupposed a power in the individual to do the act for himself, if present. The act to be done is not the act of the agent, but the act of the principal; and the agent can do no act in the name of the principal which the principal might not himself do if he were personally present. The principal is present by his representative, and the making or execution of the contract, or acknowledgment of a deed, is his act or acknowledgment. But it would be preposterous, where the power is in its nature revocable, to hold that the principal was, in contemplation of law, present, making a contract or acknowledging a deed, when he was in fact lying insensible upon his deathbed, and this fact well known to those who undertook to act with and for him. The act done by the agent, under a revocable power, implies the existence of volition on the part of the principal. He makes the contract. He does the act. It is done through the more active instrumentality of another, but the latter represents his person, and uses his name. Further: Upon the constitution of an agent or attorney to act for another, where the authority is not coupled with an interest, and not irrevocable, there exists at all times a right of supervision in the principal, and power to terminate the authority of the agent at the pleasure of the principal. The law secures to the principal the right of judging how long he will be represented by the agent and suffer him to act in his name. So long as, having the power, he does not exercise the will to revoke, the authority continues. When, then, an act of Providence deprives the principal of the power to exercise any judgment or will on the subject, the authority of the agent to act should thereby be suspended for the time being; otherwise, the right of the agent would be continued beyond the period when all evidence that the principal chose to continue the authority had ceased; for, after the principal was deprived of the power to exercise any will upon the subject, there could be no assent or acquiescence, or evidence of any kind to show that he consented, that the agency should continue to exist. And, moreover, a confirmed insanity would render wholly irrevocable an authority which, by the original nature of its constitution, it was to be in the power of the principal at any time to revoke. It is for these reasons that we are of opinion that the insanity of the principal, or his incapacity to exercise any volition upon the subject, by reason of an entire loss of mental power, operates as a revocation, or suspension for the time being, of the authority of an agent acting under a revocable power."

The rule laid down in this case is adopted by Judge Story. Story, Ag. § 481. See, also, Refining Co. v. MacMahon, 38 N. J. Law, 536.

The reasoning of these cases is, it seems to us, unanswerable, and the principle established by them should be adopted as the law applicable to this class of cases; and it must be held that, when one undertakes to deal with an agent having a written power of attorney, he, equally with the agent, knowing of the insanity of the principal, the transaction thus made has no more weight than if the transaction had been directly with the insane principal himself. If the defendant had been permitted to make the proof which he sought,

it would have appeared that, at the time this mortgage was made, Mrs. Merritt was insane, and unable to contract, and that that fact was known to Post, and was also known to the plaintiffs, who subsequently became the owners of the mortgage. This proof would have put upon the plaintiffs, either the burden of disproving the insanity or Post's knowledge of it, or of proving such other facts as would entitle one who has had a transaction with a lunatic to recover, either upon the contract or the consideration which he had advanced.

It is suggested that these facts already appeared in the case, and for that reason the plaintiffs should have had the relief which they obtained without regard to the insanity of Mrs. Merritt. It is quite true that it appeared that there was advanced upon this mortgage the sum of $25,000 to George Merritt, and that that sum was used to pay another mortgage upon these same premises, which had been made by George Merritt as attorney for his mother during the previous year. But these facts added nothing to the right of the plaintiffs to recover, so long as there was no proof of the lunacy of Mrs. Merritt in the case. Until that proof was given, there was no necessity of controverting those facts, and any evidence given to controvert them would also have been immaterial, for it would not have affected the right of the plaintiffs to have foreclosure of the mortgage. The defendant was not bound to go into the proof of the consideration of this mortgage until his proof of the lunacy of the principal had been given, so that the further proof was material and competent, as affecting the right of the plaintiffs to recover. For this reason, the evidence of the use to which this money was put does not affect the rights of the parties. The defendant is still entitled to make proof of the lunacy of Mrs. Merritt, that he may supplement that, if he can, by an answer to the proof which was given as to the use made of the money advanced upon this mortgage, when that proof shall have become material.

The judgment should be reversed, and a new trial ordered, with costs to appellants to abide event. All concur.