Thomas C. **RUTLAND**, as Administrator of the Estate of Glenn Rubin Rutland, deceased, Appellee,

v.

W. R. **SIKES**, Sr., and W. R. Sikes, Jr., Appellants.

No. 8686.

United States Court of Appeals Fourth Circuit.

Argued Oct. 8, 1962.

Decided Dec. 28, 1962.

William H. Duncan, West Columbia, S. C., and J. Reese Daniel, Columbia, S. C., for appellants.

Marshall B. Williams, Orangeburg, S. C. (Lofton M. Fanning and W. T. Klapman, Orangeburg, S. C., on brief), for appellee.

Before HAYNSWORTH and BRYAN, Circuit Judges, and LEWIS, District Judge.

HAYNSWORTH, Circuit Judge.

The defendants in this action for wrongful death appeal from a judgment for the plaintiff. They question the sufficiency of the evidence to sustain the finding that they are responsible as masters for the acts of the driver of their truck and the further finding that the negligence of the driver of their truck was the proximate cause of the death of the plaintiff's decedent.

We think the evidence supports the findings of the District Judge, before whom the case was tried without a jury.

This action arose out of a head-on collision between two dump trucks, each of which was engaged in work in connection with the construction of a new highway in South Carolina. The driver of each truck was killed. Since there were no eyewitnesses, the findings of the District Judge as to the cause of the accident rest upon circumstantial evidence.

■ The circumstantial evidence, however, is persuasive and fully warrants the inferences drawn by the District Court.

The highway under construction was a part of the Interstate Highway System. In the area in question, the northbound lanes had been fully graded and a sand-clay base defining the roadbed was in place and usable for vehicular traffic engaged in construction activities. Braxton, a subcontractor, was engaged at the time in moving sand, clay or earth in dump trucks over the bed of the northbound lanes for a distance of some miles between the place where the materials were available and the point at which they were required in connection with extension of the work. For this purpose, he had engaged others to supply trucks and drivers to him. Among others, the defendants supplied several such trucks with drivers for this purpose, and the younger Mr. Sikes also, at times, served as one of the drivers.

For their services, the defendants were compensated on the basis of a fixed price per yard of earth moved. The younger Mr. Sikes was frequently, but not always, on the job, and, as noted, he sometimes drove one of the defendants' trucks. The drivers were employed by the defendants, and were subject to supervision and discharge by them. When Mr. Sikes, Jr. was not on the job, Braxton would issue instructions to the drivers as to what materials they should pick up and where it

should be placed, but such general instructions are far from the specific assumption of immediate control which is required to bring into play the borrowed servant doctrine and to relieve the general employer from responsibility for the acts of his servant.

It also appears that the drivers engaged in driving the defendants' trucks were carried on Braxton's payrolls, but the testimony discloses that this was done solely for the purpose of enabling Braxton to certify that the drivers had been paid the minimum wages required by the federal statutes. Such disbursements by Braxton were deducted from the amounts determined to be due the defendants on the basis of the number of yards of material they moved in their trucks. Under these circumstances, we think it plain that the driver of the defendants' truck involved in the accident was on the business of the defendants and was subject to their supervision and control. It follows that the defendants may not be relieved from responsibility for his acts under the borrowed servant doctrine.

At the time of the accident, the defendants' dump truck was fully loaded and was proceeding along the sand-clay surface of the northbound lanes in the direction of the place where the material was to be placed. An empty dump truck, owned by one Covington and driven by the plaintiff's decedent, was proceeding in the opposite direction to pick up a new load of material. The head-on collision between the two dump trucks occurred well to the right of the center line of the roadway, viewed from the point of view of the plaintiff's decedent. Indeed, the location of the trucks after the accident and the tire tracks leading up to the point of impact, indicate that the truck of the plaintiff's decedent was partially on the shoulder on his side of the roadway.

Extensive damage to the trucks, the fatal injury of both drivers, and the fact that the loaded body of the defendants' truck was hurled some distance from the chassis of that truck suggest that the relative speed of the trucks was high, and that the defendants' truck was, at least, a substantial contributor to that relative speed.

The defendants do not deny, indeed, in light of the evidence at the scene, they could not deny, that their driver was far over on the wrong side of the road. They challenge the sufficiency of the evidence to establish the fault of their servant on the ground that the South Carolina statutes prescribing the rules of the road, as construed by them, do not apply to highways under construction and not yet open for public use, and, on the further ground that the evidence does not disclose the circumstances under which their driver moved over well to the left of the center line of the roadway.

■ If we may accept the defendants' contention that South Carolina's statute requiring motorists to drive to the right of the center line of any roadway used by vehicles proceeding in opposite directions does not apply to a roadway under construction and not yet open for use by the general public, the requirement that vehicles drive to the right when meeting traffic proceeding in the opposite direction on the same roadway is so nationally uniform that, without the statute, due care requires a driver facing oncoming traffic on such a roadway to proceed on his righthand side of the center line of the roadway. He could not rationally expect the drivers of oncoming vehicles to depart from their deeply ingrained habits and reverse the procedure for safely meeting and passing traffic proceeding in the opposite direction.

■ Since there were no eyewitnesses, one may speculate that there may have been some sudden emergency which caused the defendants' servant to move over on the wrong side of the roadway, but the fact that he was on the wrong side of the road when he collided with the truck driven by the plaintiff's decedent warrants an inference of fault upon his part. The fact that there were no eyewitnesses does not deprive the finder of fact of the power of drawing reasonable inferences founded upon common ex-

perience from the circumstantial evidence, and the exercise of this power is not made insupportable by speculative assumptions that extraordinary circumstances might have existed, which, if established, would make the inference untenable.

No one may say with absolute certainty why the defendants' servant got so far over on the wrong side of the highway, but it is undeniable that he was driving at substantial speed far over on the wrong side of the road where, ordinarily in the face of an approaching vehicle, he had no right to be, while the plaintiff's decedent was driving to his right of the center line of the roadway, or partially on the shoulder on his side of the roadway, where, in an effort to safely meet and pass the defendants' truck, he had every right to be.

Under these circumstances, the findings of fault on the part of the defendants' servant and the absence of contributory negligence on the part of the plaintiff's decedent were fully warranted.

Affirmed.