**John J. DONNELLY, Petitioner,**

v.

**Honorable Barrington D. PARKER et al., Respondents.**

No. 73–1259.

United States Court of Appeals, District of Columbia Circuit.

Aug. 21, 1973.

**404**

Charles B. Sullivan, Jr., Washington, D. C., was on the petition for writ of mandamus for petitioner.

Harold H. Titus, Jr., U. S. Atty., John A. Terry, and Peter R. Reilly, Asst. U. S. Attys., were on the opposition to the petition for respondent Parker.

Philip N. Margolius, Washington, D. C., was on the opposition to the petition for respondent Kunz.

Calvin H. Cobb, Jr., and William G. Christopher, Washington, D. C., were on the opposition for respondent Ferry & Co., Inc.

Before FAHY, Senior Circuit Judge, and ROBINSON and ROBB, Circuit Judges.

SPOTTSWOOD W. ROBINSON, III, Circuit Judge:

This case is before the court on a petition for a writ of mandamus directing the Honorable Barrington D. Parker, a United States District Judge for the District of Columbia, to order physical and mental examination of Catherine W. Kunz, the plaintiff named in an action brought against petitioner and another in the District Court. Judge Parker denied petitioner's motion for the examinations, and the validity of that ruling is a subject of lively argumentation here. We find it unnecessary to enter the debate on that score for we accept the further contention that, in the circumstances presented here, the ruling is not reviewable by way of mandamus. We accordingly deny the writ.

**I**

Petitioner is an attorney practicing in the District of Columbia. He was joined as a party defendant in a suit filed in the name of Mrs. Kunz, a former client. The complaint therein alleges that petitioner caused an unauthorized disposition to be made of securities owned by Mrs. Kunz, and it seeks a return of the securities or damages.

Petitioner defends on the ground that Mrs. Kunz gave him ownership of the securities in partial payment of a fee for services rendered in her behalf. Petitioner also says that Mrs. Kunz was satisfied with the services, and that she is not the moving spirit behind the litigation. In fact, asserts petitioner, subsequent to completion of the services, her health deteriorated to the point that she lacked capacity to bring the action.[1]

That Mrs. Kunz has been victimized by sudden and serious illness is conceded. The discord, rather, is over the condition in which the illness has left her and its impact upon the proceeding. The dispute ripened for judicial consideration when petitioner gave notice that he would take Mrs. Kunz' deposition. Her counsel then moved for an order barring that activity on the ground that she was "unable to withstand the rigors of a deposition and is further in such a state of mental and physical debility that she is unable at the present time to answer questions concerning this matter." The motion was supported by the affidavit of Mrs. Kunz' attending physician stating that she "is not physically or mentally able to undergo an oral deposition and may not be fit to do so for some time to come." The affidavit added that Mrs. Kunz "is approximately 76 years old and the rigors of an oral deposition at this time would endanger her health and life." Judge Parker granted

---

1. But see text *infra* at notes 13–19.

the motion, and the deposition was thus precluded.

██ Promptly thereafter, petitioner filed his own motion for an order directing physical and mental examinations of Mrs. Kunz.[2] The motion warned that in the event that the examinations disclosed mental disability, petitioner would move to dismiss the lawsuit as spurious. The motion was accompanied by petitioner's affidavit stating his belief that the suit had been filed without Mrs. Kunz' authority. The motion was opposed on grounds that Mrs. Kunz' physical-mental condition was not in controversy, and that good cause for the examinations had not been shown.[3] The opposition also claimed that Mrs. Kunz was competent when she obtained counsel and authorized him to sue.[4] Judge Parker denied the motion and petitioner,

now invoking the All Writs Act,[5] seeks relief at the hand of this court.[6]

## II

██ As the Supreme Court admonishes, "[t]he peremptory writ of mandamus has traditionally been used in the federal courts only 'to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so.'"[7] That is not to say, however, that every jurisdictional excess or omission will support a call for mandamus against a federal judge. For "[w]hile the courts have never confined themselves to an arbitrary and technical definition of 'jurisdiction,' it is clear that only exceptional circumstances amounting to a judicial 'usurpation of power' will justify the invocation of this

---

2. "When the mental or physical condition (including the blood group) of a party, or of a person in the custody or under the legal control of a party, is in controversy, the court in which the action is pending may order the party to submit to a physical or mental examination by a physician or to produce for examination the person in his custody or legal control. The order may be made only on motion for good cause shown and upon notice to the person to be examined and to all parties and shall specify the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made." Fed.R.Civ.P. 35(a).

3. See note 2, *supra.* See also Schlagenhauf v. Holder, 379 U.S. 104, 116–122, 85 S.Ct. 234, 13 L.Ed.2d 152 (1964).

4. Counsel filed in the District Court an affidavit stating that Mrs. Kunz, while lucid, had personally appeared in his office and affirmed the allegations on which the suit is founded. Counsel's theory is that notwithstanding her subsequent illness, he had full authority to proceed in her behalf. But see note 20, *infra.* ·

5. "The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a) (1970).

6. Petitioner joined Mrs. Kunz and his codefendant with Judge Parker as corespondents to the petition for mandamus. He now asks

for an order requiring counsel for Mrs. Kunz to show his authority to represent her here. The cornerstone of this request is the premise which is basic to petitioner's bid for mandamus—that Mrs. Kunz may be mentally incompetent—and from this petitioner argues that if in fact she is incompetent, her counsel's authority has terminated. See note 20, *infra.* We have undoubted power to require counsel before us to demonstrate their authority, *e. g.,* Pueblo of Santa Rosa v. Fall, 273 U.S. 315, 319, 47 S.Ct. 361, 71 L.Ed. 658 (1927), but the circumstances militate against an exercise of discretion to require it here. Mrs. Kunz' physical-mental condition remains a burning issue in the District Court; indeed, it may be the pivot upon which much of the case on the merits will turn. That court is the forum in which a resolution of the issue should be undertaken in the first instance. Moreover, this court is not equipped to embark upon the kind of evidentiary exploration which a controversy of this sort obviously demands. Counsel should be permitted to continue his representation, both here and in the District Court, until the question can suitably be determined there.

7. Will v. United States, 389 U.S. 90, 95, 88 S.Ct. 269, 19 L.Ed.2d 305 (1967), quoting Roche v. Evaporated Milk Ass'n, 319 U.S. 21, 26, 63 S.Ct. 938, 87 L.Ed. 1185 (1943). See, to the same effect, Schlagenhauf v. Holder, *supra* note 3, 379 U.S. at 109–110, 85 S.Ct. 234; Bankers Life & Cas. Co. v. Holland, 346 U.S. 379, 382, 74 S.Ct. 145, 98 L.Ed. 106 (1953).

extraordinary remedy." [8] And while in an unusual case mandamus may lie to enforce the performance of a judicial responsibility,[9] it is well settled that it cannot be used as a substitute for appeal.[10] The proponent of mandamus has "the burden of showing that [his] right to issuance of the writ is 'clear and indisputable.' " [11]

◼◼◼◼ Plainly, in the case at bar, the District Judge did not exceed his jurisdiction—in any real sense of the word.[12] Capacity of an individual, not acting in a representative character, to sue or be sued in the federal courts is ordinarily to be determined by the law of his domicile.[13] The record before us does not permit a satisfactory conclusion as to where Mrs. Kunz is domiciled [14] or, of course, as to just what her mentality may be, but these matters are of little moment to jurisdiction. If by the law of her domicile she can sue irrespective of actual mental incompetence, she may do so in any federal court. But even if the domiciliary law undertook to withdraw that attribute because of mental disability, litigation of her rights in the District Court is still to be governed by Federal Civil Rule 17(c).[15] That rule provides that "[t]he court shall appoint a guardian ad litem for an . . . incompetent person not otherwise represented in an action or shall make such other order as it deems proper for the protection of the . . . incompetent person." [16] So, state law may confer but

8. Will v. United States, *supra* note 7, 389 U.S. at 95, 88 S.Ct. at 273, quoting De Beers Consol. Mines v. United States, 325 U.S. 212, 217, 65 S.Ct. 1130, 89 L.Ed. 1566 (1945). See, to the same effect, Ex parte Fahey, 332 U.S. 258, 260, 67 S.Ct. 1558, 91 L.Ed. 2041 (1947).

9. *E. g.*, McClellan v. Carland, 217 U.S. 268, 279–282, 30 S.Ct. 501, 54 L.Ed. 762 (1910) (refusal to proceed with case) ; In re Winn, 213 U.S. 458, 465–468, 29 S.Ct. 515, 53 L.Ed. 873 (1909) (refusal to remand case) ; In re Grossmayer, 177 U.S. 48, 49–50, 20 S.Ct. 535, 44 L.Ed. 665 (1900) (refusal to take jurisdiction) ; Ex parte Schollenberger, 96 U.S. (6 Otto) 369, 374–378, 24 L.Ed. 853 (1878) (refusal to take jurisdiction) ; Stafford v. Union Bank, 58 U.S. (17 How.) 275, 283–284, 15 L.Ed. 101 (1854) (refusal to issue execution) ; Life & Fire Ins. Co. v. Wilson, 33 U.S. (8 Pet.) 291, 301–304, 8 L.Ed. 949 (1834) (refusal to sign judgment) ; Yablonski v. UMW, 147 U.S.App.D.C. 193, 195, 454 F.2d 1036, 1038 (1971), cert. denied, 406 U.S. 906, 92 S.Ct. 1609, 31 L.Ed. 2d 816 (1972) (refusal to follow mandate).

10. See discussion in text *infra* at notes 23–26.

11. Bankers Life & Cas. Co. v. Holland, *supra* note 7, 346 U.S. at 384, 74 S.Ct. at 148, quoting United States v. Duell, 172 U.S. 576, 582, 19 S.Ct. 286, 43 L.Ed. 559 (1899). *Accord*, Will v. United States, supra note 7, 389 U.S. at 96, 88 S.Ct. 269.

12. As the Court stated in Will v. United States, *supra* note 7, 389 U.S. at 98 n. 6, 88 S.Ct. at 275, it will not do "to argue that a judge has no 'power' to enter an erroneous order. Acceptance of this semantic fallacy would undermine the settled limitations upon the power of an appellate court to review interlocutory orders. Neither 'jurisdiction' nor 'power' can be said to 'run the gauntlet of reversible errors.' Bankers Life & Cas. Co. v. Holland, 346 U.S. 379, 382, 74 S.Ct. 145, 147 [98 L.Ed. 106] (1953). Courts faced with petitions for the peremptory writs must be careful lest they suffer themselves to be misled by labels such as 'abuse of discretion' and 'want of power' into interlocutory review of nonappealable orders on the mere ground that they may be erroneous."

13. Fed.R.Civ.P. 17(b). See Slade v. Louisiana Power & Light Co., 418 F.2d 125, 126 (5th Cir. 1969), cert. denied, 397 U.S. 1007, 90 S.Ct. 1233, 25 L.Ed.2d 419 (1970) ; Brimhall v. Simmons, 338 F.2d 702, 706 (6th Cir. 1964) ; Redditt v. Hale, 184 F.2d 443, 447 (8th Cir. 1950) ; 6 C. Wright & A. Miller, Federal Practice § 1571 (1971). But see Fallat v. Gouran, 220 F.2d 325, 328–329 (3d Cir. 1955).

14. Seemingly, the point has not been directly litigated in the District Court.

15. Bengtson v. Travelers Indem. Co., 132 F.Supp. 512, 517 (W.D.La.1955), aff'd, 231 F.2d 263 (5th Cir. 1956) ; First Nat'l City Bank v. Gonzalez & Co. Sucr. Corp., 308 F.Supp. 596, 600 (D.Puerto Rico 1970) ; 6 C. Wright & A. Miller, Federal Practice § 1571 (1971). See also Hanna v. Plumer, 380 U.S. 460, 469–474, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965) ; Constantine v. Southwestern Louisiana Institute, 120 F.Supp. 417, 418–419 (W.D.La.1954).

16. "Whenever an infant or incompetent person has a representative, such as a general

not deny capacity to sue or defend federally,[17] and the only effect of a party's incompetence upon maintenance of the action is the possible need for appointment of a guardian ad litem or entry of a protective order.[18] In no event is federal jurisdiction to entertain the cause diminished.[19]

## III

■■■■■ The only other claim open to petitioner was that the circumstances put Judge Parker under a duty to issue the examinatorial order sought. The evidence of the poor state of Mrs. Kunz' health could, on petitioner's challenge, have presented the occasion for an inquiry into her capacity to understand the meaning and effect of the litigation being prosecuted in her name.[20] Beyond that, despite the earlier ruling adverse to petitioner's effort to depose Mrs. Kunz, he was entitled to a fair opportunity to contest the affidavit averring

that an attempt to do so would be unwise.[21] And surely a court-ordered physical-mental examination of Mrs. Kunz, conducted under appropriate safeguards, might have developed important information to serve both of those purposes,[22] and thus to materially advance the progress of the suit toward a final judgment on the merits.

■■■■■ In the present procedural posture of the case, however, these considerations are beside the point. They do not survive the threshold question whether the contested ruling can now be reviewed in a mandamus proceeding or whether review must await the District Court's final disposition. As the Supreme Court has observed, "[a]ll our jurisprudence is strongly colored by the notion that appellate review should be postponed, except in certain narrowly defined circumstances, until after final judgment has been rendered by the trial court."[23] Mandamus "does not 'run the

guardian, committee, conservator, or other like fiduciary, the representative may sue or defend on behalf of the infant or incompetent person. If an infant or incompetent person does not have a duly appointed representative he may sue by his next friend or guardian ad litem. The court shall appoint a guardian ad litem for an infant or incompetent person not otherwise represented in an action or shall make such other order as it deems proper for the protection of the infant or incompetent person." Fed.R.Civ. P. 17(c).

17. See authorities cited *supra* notes 13, 15.

18. See Roberts v. Ohio Cas. Ins. Co., 256 F.2d 35, 38–39, 68 A.L.R.2d 747 (5th Cir. 1958) ; United States v. Noble, 269 F.Supp. 814, 815 (E.D.N.Y.1967).

19. See New Mexico Veterans' Serv. Comm'n v. United Van Lines, 325 F.2d 548, 550 (10th Cir. 1963). See also Till v. Hartford Accident & Indem. Co., 124 F.2d 405, 408–409 (10th Cir. 1941) ; Rutland v. Sikes, 203 F.Supp. 276, 277 (E.D.S.C.), aff'd, 311 F.2d 538 (4th Cir. 1962), cert. denied, 374 U.S. 830, 83 S.Ct. 1871, 10 L.Ed.2d 1053 (1963).

20. As we have said, Fed.R.Civ.P. 17(c) directs district courts to either appoint guardians ad litem or fashion protective orders for incompetent persons not otherwise represented. See text *supra* at notes 15–19. Moreover, insanity or other severe mental difficulty of a client may operate to suspend

or terminate a preexisting attorney-client relationship. See Sullivan v. Dunne, 198 Cal. 183, 244 P. 343, 346 (1926) ; Evans v. York, 217 S.W.2d 749, 751 (Ct.App.Mo. 1949) ; Merritt v. Merritt, 27 App.Div. 208, 50 N.Y.S. 604, 605–608 (1898). See also Jackson v. Hall, 139 Kan. 832, 836, 32 P.2d 1055, 1057 (1934) ; Lewis v. Commissioner of Banks, 286 Mass. 570, 575, 190 N.E. 790, 791 (1934) ; Restatement (Second) of Agency § 122(1) (1958). *Cf.* Kimmie v. Terminal R. Ass'n, 344 Mo. 412, 126 S.W.2d 1197, 1200 (1939).

21. A physically and mentally-able litigant bears obligation to respond to an effort by his adversary to obtain deposition-discovery of unprivileged information relevant to the subject matter in suit. Fed.R.Civ.P. 30(a), 36(b).

22. See Bodnar v. Bodnar, 441 F.2d 1103, 1104 (5th Cir.), cert. denied, 404 U.S. 913, 92 S.Ct. 232, 30 L.Ed.2d 186 (1971). See also Smith v. United States, 174 F.Supp. 828 (S.D.Cal.), appeal dismissed, 272 F.2d 228 (9th Cir. 1959), cert. denied, 362 U.S. 954, 80 S.Ct. 868, 4 L.Ed.2d 871 (1960).

23. Will v. United States, *supra* note 7, 389 U.S. at 96, 88 S.Ct. at 274, 19 L.Ed.2d 305. See also 28 U.S.C. §§ 1291, 1292 (1970) ; Cobbledick v. United States, 309 U.S. 323, 326, 60 S.Ct. 540, 84 L.Ed. 783 (1940). "This general policy against piecemeal appeals takes on added weight in criminal cas-

gauntlet of reversible errors' ";[24] it "may not be used to thwart the congressional policy against piecemeal appeals."[25] Only where an appeal can promise no more than "a clearly inadequate remedy" may the remedy of mandamus be resorted to.[26]

The order denying the examinations, and foreclosing the discovery which petitioner sought thereby, was interlocutory and nonappealable.[27] The cases denying review of discovery orders by mandamus are legion.[28] Petitioner has not shown, nor are we able to per-

es," Will v. United States, *supra* note 7, 389 U.S. at 96, 88 S.Ct. at 274, but undeniably the policy retains its potency in civil litigation.

24. Will v. United States, *supra* note 7, 389 U.S. at 104, 88 S.Ct. at 278, quoting Bankers Life & Cas. Co. v. Holland, *supra* note 7, 346 U.S. at 382, 74 S.Ct. 145, 98 L.Ed. 106.

25. Parr v. United States, 351 U.S. 513, 520 521, 76 S.Ct. 912, 917, 100 L.Ed. 1377 (1956). *Accord,* Bankers Life & Cas. Co. v. Holland, *supra* note 7, 346 U.S. at 382–383, 74 S.Ct. 145; Ex parte Fahey, *supra* note 8, 332 U.S. at 260, 67 S.Ct. 1558, 91 L.Ed. 2041; Roche v. Evaporated Milk Ass'n, *supra* note 7, 319 U.S. at 25, 30, 63 S.Ct. 938, 87 L.Ed. 1185.

26. Bankers Life & Cas. Co. v. Holland, *supra* note 7, 346 U.S. at 385, 74 S.Ct. 145; Ex parte Fahey, *supra* note 8, 332 U.S. at 260, 67 S.Ct. 1558.

27. Compare English v. Cunningham, 108 U.S.App.D.C. 356, 357, 282 F.2d 839, 840 (1960); Pauls v. Secretary of Air Force, 457 F.2d 294, 298 (1st Cir. 1972); American Express Warehousing, Ltd. v. Transamerica Ins. Co., 380 F.2d 277, 281–282 (2d Cir. 1967); Borden Co. v. Sylk, 410 F.2d 843, 845, 846 (3d Cir. 1969); Gosa v. Securities Investment Co., 449 F.2d 1330, 1332–1333 (5th Cir. 1971); Zalatuka v. Metropolitan Life Ins. Co., 108 F.2d 405, 406–407 (7th Cir. 1939). There are exceptions, not applicable here, to the rule of nonappealability, *E. g.,* Westinghouse Elec. Corp. v. City of Burlington, 122 U.S.App.D.C. 65, 68–69, 351 F.2d 762, 765–766 (1965); Diaz v. Southern Drilling Corp., 427 F.2d 1118, 1122–1123 (5th Cir.), cert. denied, Trefina A. G. v. United States, 400 U.S. 878, 91 S. Ct. 118, 27 L.Ed.2d 115 (1970).

28. American Express Warehousing, Ltd. v. Transamerica Ins. Co., *supra* note 27, 380 F.2d at 283–284; Belships Co., Ltd. Skibs A/S v. Republic of France, 184 F.2d 119 (2d Cir. 1950); Bank Line, Ltd. v. United States, 163 F.2d 133, 136, 137 (2d Cir. 1947); Byram Concretanks, Inc. v. Meaney, 286 F.2d 170, 171 (3rd Cir. 1961); National Bondholders Corp. v. McClintic, 99 F.2d 595, 598–599 (4th Cir. 1938); In re Illinois Cent. R.R., 192 F.2d 465, 466 (5th Cir. 1951); Chemical § Indus. Corp. v. Druffel,

301 F.2d 126, 129 (6th Cir. 1962); Fisher v. Delehant, 250 F.2d 265, 269–270 (8th Cir. 1957); Belfer v. Pence, 435 F.2d 121, 122–123 (9th Cir. 1970); Paramount Film Distrib. Corp. v. Civic Center Theatre, 333 F.2d 358, 360–361 (10th Cir. 1964). See also C. Wright, The Doubtful Omniscience of Appellate Courts, 41 Minn.L.Rev. 751, 775–76 (1957); P. Carrington, The Power of District Judges and the Responsibility of Courts of Appeal, 3 Ga.L.Rev. 507, 513 (1969).

See, however, Los Angeles Brush Mfg. Corp. v. James, 272 U.S. 701, 47 S.Ct. 286, 71 L.Ed. 481 (1927), and Ex parte Uppercu, 239 U.S. 435, 36 S.Ct. 140, 60 L.Ed. 368 (1915), in each of which the Supreme Court ordered a writ of mandamus directed to a district court in the exercise of the power it formerly possessed to issue "writs of mandamus in cases, . . . warranted by the principles and usages of law, to any courts appointed . . . under the authority of the United States." Judiciary Act of 1789, 1 Stat. 81; Act of March 3, 1911, ch. 231, 36 Stat. 1156. This power continued until passage of the Act of June 25, 1948, ch. 646, 62 Stat. 944, 28 U.S.C. § 1651 (1970), by which the authority of all federal courts is now limited to "writs *necessary or appropriate in aid of their respective jurisdictions and* agreeable to the usages and principles of law" (emphasis supplied). See In re Josephson, 218 F.2d 174, 177–179 (1st Cir. 1954). As that case warns,

[D]ecisions of the Supreme Court of the United States, at least prior to 1948, supporting the issuance, *by that Court,* of a writ of mandamus directed to a lower federal court, may not safely be relied upon by an intermediate court of appeals as authority for the issuance by the latter court of a writ of mandamus directed to a district court within the circuit. The reason is that the Supreme Court might have been exercising a different sort of power from the strictly auxiliary power given to us under the all writs section.

218 F.2d at 179 (emphasis in original). See also La Buy v. Howes Leather Co., 352 U.S. 249, 265–266, 77 S.Ct. 309, 1 L.Ed.2d 290 (1957) (dissenting opinion).

ceive, any peculiar circumstance which would set this case apart as truly unusual.[29] On the contrary, the most that can be urged is that Judge Parker erred in applying the standards for physical-mental examinations to the situation displayed, and mandamus simply does not reach to such an error.[30]

The question is not whether petitioner can obtain review of the ruling on the examination issue, but whether he can do so now. Should petitioner's defensive efforts in the District Court prove to be ultimately unsuccessful, he can litigate that ruling, if unchanged, on an appeal from the final judgment. No rights will be jeopardized,[31] no irreparable injury will be suffered,[32] nor will any position be irreversibly compromised.[33] To be sure, petitioner may incur added expense, encounter added delay and perhaps even be subjected to an unnecessary trial, but "that inconvenience is one which we must take it Congress contemplated in providing that only final judgments should be reviewable." [34]

In sum, "[t]he peremptory common-law writs are among the most potent

29. We recognize that petitioner's arguments encompass the contention that the rulings complained of impinged on Fed.R.Civ.P. 17(c) and 35(a). See notes 2, 16, *supra*. While a pattern of noncompliance with the federal rules may warrant an invocation of mandamus, La Buy v. Howes Leather Co., *supra* note 28, 352 U.S. at 257–258, 77 S.Ct. 309; see also Will v. United States, *supra* note 7, 389 U.S. at 99–100, 102–104, 88 S. Ct. 269; Los Angeles Brush Mfg. Corp. v. James, *supra* note 28, 272 U.S. at 706, 47 S.Ct. 286; cf. McCullough v. Cosgrave, 309 U.S. 634, 60 S.Ct. 703, 84 L.Ed. 992 (1940), the Court has made it clear that La Buy "is simply inapposite where there is no showing of a persistent disregard of the federal rules." Will v. United States, *supra* note 7, 389 U.S. at 104 n. 14, 88 S.Ct. at 278.

We are advertent, too, to Schleganhauf v. Holder, *supra* note 3, where the Court held that mandamus was appropriately used to review a district court order subjecting a defendant in a civil case to physical and mental examinations. The Court rested its holding on the presence of "the basic, undecided question of whether a district court could order the mental or physical examination of a defendant," 379 U.S. at 110, 85 S. Ct. at 238, 13 L.Ed.2d 152, and, quite significantly, stated:

This is not to say, however, that, following the setting of guidelines in this opinion, any future allegation that the District Court was in error in applying these guidelines to a particular case makes mandamus an appropriate remedy. The writ of mandamus is not to be used when 'the most that could be claimed is that the district courts have erred in ruling on matters within their jurisdiction.' Parr v. United States, 351 U.S. 513, 520, 76 S.Ct. 912, 917, 100 L.Ed. 1377; see Bankers Life & Casualty Co. v. Holland, *supra*, at 382.

379 U.S. at 112, 85 S.Ct. at 239. See also Will v. United States, *supra* note 7, 389 U. S. at 104–105 n. 14, 88 S.Ct. 269.

30. Will v. United States, *supra* note 7, 389 U.S. at 104, 88 S.Ct. 269; Schleganhauf v. Holder, *supra* note 3, 379 U.S. at 112, 85 S.Ct. 234; Parr v. United States, *supra* note 25, 351 U.S. at 520–521, 76 S.Ct. 912; Roche v. Evaporated Milk Ass'n, *supra* note 7, 319 U.S. at 30, 63 S.Ct. 938. See also note 29, *supra*.

31. Compare Texaco, Inc. v. Borda, 383 F.2d 607, 608–610 (3d Cir. 1967) (order denying leave to depose 71-year-old witness); Hartley Pen Co. v. United States Dist. Ct., 287 F.2d 324, 328–332 (9th Cir. 1961) (order requiring disclosure of trade secrets).

32. Investment Properties Int'l, Ltd. v. IOS Ltd., 459 F.2d 705, 707, 708 (2d Cir. 1972) (order vacating notices of taking of depositions, virtually precluding discovery of facts on which jurisdiction and standing depended). Compare discussion in text *supra* at notes 13–19.

33. Compare United States v. Hemphill, 369 F.2d 539, 543–544 (4th Cir. 1966) (risk of contempt citation).

34. Roche v. Evaporated Milk Ass'n, *supra* note 7, 319 U.S. at 30, 63 S.Ct. at 943. Accord, Bankers Life & Cas. Co. v. Holland, *supra* note 7, 346 U.S. at 382–383, 74 S.Ct. 145, 98 L.Ed. 106; United States Alkali Export Ass'n v. United States, 325 U.S. 196, 202–203 (1945). See also Will v. United States, *supra* note 7, 389 U.S. at 97 n. 5. "In strictly circumscribing piecemeal appeal, Congress must have realized that in the course of judicial decision some interlocutory orders might be erroneous." Bankers Life & Cas. Co. v. Holland, *supra* note 7, 346 U.S. at 383, 74 S.Ct. at 148.

weapons in the judicial arsenal," [35] and "[a]s extraordinary remedies, they are reserved for really extraordinary causes." [36] The case before us is not of that character. The writ of mandamus which petitioner seeks must accordingly be denied.

Writ denied.

FAHY, Senior Circuit Judge, concurring with a comment:

The comment has reference to the language of Bankers Life & Cas. Co. v. Holland, 346 U.S. 379, 384, 74 S.Ct. 145, 98 L.Ed. 106 (1953) repeated in the present opinion of our court. The language conveys the view that the burden rests upon the petitioner for the writ of mandamus to show "that its right to issuance of the writ is 'clear and indisputable.'" The "clear and indisputable" language in turn is taken from United States v. Duell, 172 U.S. 576, 582, 19 S. Ct. 286, 43 L.Ed. 559 (1899). I should suppose "indisputable" is to be read as somewhat synonymous with "clear," for in *Bankers Life* itself there was a dissent by Mr. Justice Frankfurter, with whom Mr. Justice Jackson and Mr. Justice Minton joined. While the dissent was primarily to the effect that grant of the writ of certiorari in *Bankers Life* was improvident and therefore that the writ should be dismissed, Justice Frankfurter also stated:

> The Court's opinion does not help decision when a party is dismissed from a litigation for reasons not as obviously compelling as those in this case. It necessarily leaves open the question whether such a ruling by a district judge may be reviewed by mandamus, without awaiting the completion of the entire litigation, in circumstances where postponement of review would involve a protracted trial, entailing heavy costs and great inconvenience.

Compare Ex parte Skinner & Eddy Corp., 265 U.S. 86, 95–96, 44 S.Ct. 446, 448, 68 L.Ed. 912, with Ex parte Chicago, R.I. & P.R. Co., 255 U.S. 273, 41 S.Ct. 288, 65 L.Ed. 631. This Court ought not to be called upon to hold that where a district judge refused to entertain a "frivolous" claim, mandamus will not issue to compel him to entertain it.

346 U.S. at 388, 74 S.Ct. at 150.

In Ex parte Skinner & Eddy Corp., 265 U.S. 86, 95–96, 44 S.Ct. 446, 68 L. Ed. 912, thus referred to, it is said mandamus is an extraordinary remedial process awarded not as a matter of right but in the exercise of a sound judicial discretion. Weight is thus added to the view indicated in Justice Frankfurter's dissent that the writ may issue in disputable circumstances. An "indisputable" standard argues for an unduly rigid rule. Such rigidity illustrates the unwisdom, as it seems to me, of phrasing principles with respect to process or to judicial review which not only cannot take into consideration unknown and variable situations which may arise, but which at times apply a brake to the fair administration of justice.

ROBB, Circuit Judge:

I agree that the writ must be denied.

The petitioner contends that he is entitled to an order for "the physical and mental examination of the plaintiff, Catharine W. Kunz, for the purpose of determining whether she had the capacity to bring the action and whether she has the capacity to maintain the action. . . . " I think the district judge, in the exercise of his discretion, properly refused to order the requested examination.

The record discloses without contradiction that on October 1, 1971 counsel

---

35. Will v. United States, *supra* note 7, 389 U.S. at 107, 88 S.Ct. at 280, 19 L.Ed.2d 305. *Accord*, Ex parte Fahey, *supra* note 8, 332 U.S. at 259, 67 S.Ct. 1558.

36. Ex parte Fahey, *supra* note 8, 332 U.S. at 260, 67 S.Ct. at 1559. *Accord*, Will v. United States, *supra* note 7, 389 U.S. at 107, 88 S.Ct. 269; Parr v. United States, *supra* note 25, 351 U.S. at 520, 76 S.Ct. 912.

for Mrs. Kunz wrote to the petitioner demanding the return of certain of her assets that were in his possession. He did not respond to this demand. In December 1971 and January 1972 she presented her complaint to the Grievance Committee and to the Federal Bureau of Investigation. On April 26, 1972 she retained counsel to file suit; on April 28 she discussed the matter with an Assistant United States Attorney; and her suit was filed on June 5, 1972. On May 15, 1972 Mrs. Kunz suffered the stroke which the petitioner claims left her mentally incompetent.

In my judgment the issue raised by the petitioner is without substance, in light of the facts disclosed by the record. I find nothing to suggest that counsel for Mrs. Kunz should have refrained from filing her lawsuit, as he was retained to do, or should have withdrawn it, because she had become ill. Indeed, had counsel failed to carry out his client's instructions he might have been guilty of professional misconduct.[1]

Even assuming that Mrs. Kunz became mentally incompetent on May 15, 1972 this did not automatically terminate her counsel's authority to file and prosecute her suit. Her illness did not infect her cause of action and in the absence of a judicial declaration of incompetency she could sue in her own name and maintain her suit. Ritter v. Ritter, 219 Ind. 487, 38 N.E.2d 997 (1942); Willett v. Webster, 337 Mass. 98, 148 N. E.2d 267 (1958); Withers v. Tucker, 32 Wis.2d 496, 145 N.W.2d 665 (1966); Neely v. Hogan, 62 Misc.2d 1056, 310

N.Y.S.2d 63 (1970). See Annot., 71 A. L.R.2d 1247.

Whether Mrs. Kunz is now able to give a deposition or otherwise respond to interrogatories is a question for the district court to decide in appropriate proceedings. If the district judge wishes to give consideration to the appointment of a guardian ad litem for Mrs. Kunz he may do so; but these matters are not before us.

---

1. The cases cited by Judge Robinson in his opinion, footnote 20, do not hold to the contrary, and in any event can be distinguished on their facts.

In Sullivan v. Dunne, 198 Cal. 183, 244 P. 343, 346 (1926), a proceeding for the appointment of a guardian for an incompetent, a lawyer attempted to inject himself into the case on the strength of a power of attorney executed six months before. The court found that the lawyer had never been authorized to appear in the matter. In Evans v. York, 217 S.W.2d 749, 751 (Ct.App. Mo.1949), a lawyer sued for compensation for services performed pursuant to a gener-

al power of attorney authorizing the performance of legal and personal services. The court held that the lawyer could not recover for services performed after her client was adjudicated insane and a guardian was appointed. Merritt v. Merritt, 27 App. Div. 208, 50 N.Y.S. 604, 605–608 (1898), was an action to foreclose a mortgage which had been executed in the name of the mortgagor by her attorney in fact. The court held that the defendant was entitled to prove that at the time of the execution of the mortgage the mortgagor was *non compos mentis* and this fact was known to the mortgagee when he took the mortgage.