**TRANS WORLD AIRLINES, INC., Plaintiff,**

v.

**SUMMA CORPORATION and William R. Lummis, Delaware Ancillary Administrator of the Estate of Howard R. Hughes, Defendants.**

Civ. A. No. 1607.

Court of Chancery of Delaware, New Castle County.

Submitted Sept. 11, 1978.
Decided Nov. 6, 1978.

---

Louis J. Finger of Richards, Layton & Finger of Wilmington and Dudley B. Tenney of Cahill, Gordon & Reindel of New York City, for plaintiff.

S. Samuel Arsht and Andrew B. Kirkpatrick, Jr. of Morris, Nichols, Arsht & Tunnell of Wilmington, for defendants.

MARVEL, Chancellor:

Defendants Summa Corporation[1] and William R. Lummis, the latter being the ancillary administrator of the estate of Howard R. Hughes and as such the holder in a fiduciary capacity of all of the issued and outstanding shares of the defendant corporation, have filed a motion for leave to withdraw their present amended answers[2]

---

1. Known as Hughes Tool Company at the inception of this litigation.

2. An amended answer was filed on behalf of Mr. Hughes on December 4, 1975 which amendment corrected an omission in his original answer of December 1, 1975. On December 3, 1975, local counsel for the defendant Summa Corporation sought leave of Court to file its proposed amended answer which was granted by order of the Court dated May 21, 1976, ironically enough over plaintiff's objection, which then local counsel, now principal counsel for defendants, seek to disavow. On the same date, namely December 3, 1975, said counsel moved for summary judgment on the pleadings. The parties having joined issue on the allegations of the complaint and the answers thereto, an order granting plaintiff's motion for partial summary judgment on the pleadings was granted in an opinion dated March 25, 1977.

which in effect admit the well pleaded allegations of the complaint. Defendants also seek relief from this Court's order of June 6, 1977, which on the basis of such answers' admissions that " * * * the well pleaded allegations of the complaint except for allegations of damages to plaintiff and except as the factual allegations of the complaint are contradicted by admissions of the plaintiff * * * " had granted plaintiff's motion for partial summary judgment, thereby recognizing plaintiff's right to an accounting for damages arising out of alleged breaches on defendants' part of their fiduciary obligation owed to plaintiff by reason of their control of such corporation. *Trans World Airlines, Inc. v. Summa Corporation,* Del.Ch., 374 A.2d 5 (1977). Summa's predecessor, Hughes Tool Company, at the time here in issue, held a majority of the stock of Trans World Airlines, and Mr. Lummis as the ancillary administrator of the estate of the late Howard R. Hughes is now the holder in a fiduciary capacity of all of the stock of Summa Corporation.

In the event that the Court should conclude that the alleged incompetency of Mr. Hughes as of the time of the drafting and execution of the amended answer prepared on his behalf by counsel does not entitle the defendant Lummis to the entry of an order permitting the withdrawal of the amended answer on file on behalf of the Hughes' estate, it necessarily follows that the amended answer of the corporate defendant may not be permitted to be withdrawn even though the Court were to consider Summa Corporation to be the alter ego of its majority and controlling stockholder.

Three grounds are advanced by the defendants to support their pending motion, each of which is premised in one way or another on the alleged lack of mental capacity on the part of the late Howard R. Hughes at the time of the preparation, execution and presentation of the amended answers here in issue.

First, defendants contend that they can establish at a hearing that the late Mr. Hughes had become mentally incompetent prior to the time of the drafting, execution and presentation by counsel of the amended answers here in issue and that he thereafter remained mentally incompetent until his death in April, 1976. However, it is clear on the present record that Mr. Hughes was never adjudicated to be mentally ill or ever committed by physicians to a mental hospital or clinic. Nonetheless, it is contended that the authority of Mr. Hughes' then principal attorneys to act on his behalf having come to an end as a result of said client having allegedly become mentally incompetent (which illness had allegedly come to pass before the preparation, execution and presentation of such amended answers) that defendants are not bound by the admissions made in such amended answers by their then chief counsel. Such counsel have since been replaced by present counsel, who formerly served as local counsel of record for defendants and as such claim to have played a passive role in this long pending litigation although they signed the pleadings in dispute. See Rule 11.

Next, defendants contend that it was unnecessary for former counsel to have made the admissions set forth in the answers now sought to be withdrawn in order to avoid a default[3] and constituted an unnecessarily costly pleading error inasmuch as Mr. Hughes' state of health as of the time of the drafting and execution of such amended answers was such as to disqualify him from being deposed. Thus, it is contended, Mr. Hughes' failure to appear in response to discovery process could not have resulted in the entry of a default judgment against him. It is accordingly argued that inasmuch as present chief counsel were allegedly unaware of the precarious state of Mr. Hughes' health at the time of the drafting and execution of such amended answers, they were not sufficiently informed on the matter of his health to be in a position to block their preparation though, as noted above, they signed such amended answers.

Finally, it is contended by present chief counsel for defendants that in any event

3. Threatened by Mr. Hughes' anticipated refusal to appear for the taking of his deposition.

former chief counsel were not authorized to file the pleadings now sought to be withdrawn and that accordingly the admissions contained therein are not binding, it being argued that former chief counsel, who were at the time allegedly aware of Mr. Hughes' precarious state of health, made no effort to communicate with him concerning the nature of the admissions proposed to be made on his behalf in the amended answers here in issue or to obtain his approval of the making of such admissions. It is also obvious that no effort was made to have a guardian or trustee appointed for Mr. Hughes.

Defendants now ask that the Court order the holding of a hearing for the purpose of determining the precise mental capacity of the late Howard R. Hughes as of the time of the drafting and signing by counsel of the amended answers here in issue, and in support of such motion have submitted the affidavit of Raymond D. Fowler, Ph.D., a clinical psychologist, who, on the basis of information furnished him as to the alleged state of Mr. Hughes' health during the period immediately preceding his death concludes that as early as 1974 Mr. Hughes had become totally incompetent.

██ The answer to the question as to whether or not an evidentiary hearing should be held for the purpose of determining whether or not Mr. Hughes was in fact mentally incompetent at the time of the filing of the pleadings which defendants seek to have stricken depends on whether or not such admissions are binding on defendants' present chief counsel, who as local counsel signed such pleadings in dispute.

First of all, as plaintiff points out, it is generally recognized that once an attorney is retained to represent a client in prospective litigation, such attorney need not have specific authority for the drafting and filing of a pleading which contains admissions damaging to the interest of his client. See *Putnam v. Day,* 89 U.S. (22 Wall.) 60, 22 L.Ed. 764 (1874), and *Christy v. Atchison, T. & S. F. Ry.,* (C.A. 8), 233 F. 255 (1916). See also 7 C.J.S. Attorney and Client § 79 (1937) for the general proposition that upon being retained by a client an attorney impliedly has bestowed upon him authority to take such action on behalf of his client as he deems necessary and which constitute a required incidence either to the prosecution of an action or its defense, or is designed to bring about the ends for the advancement of which such attorney has been retained. The basic rationale behind the recognition of this broad grant of authority to an attorney is that he should have a wide latitude within which to act on behalf of his client in order to promote order and efficiency in the presentation and conclusion of litigation. However, the general rule is that an attorney does not have the authority, solely on the basis of his retention as counsel, to act in a manner injurious to the rights of his client by purporting to make an unauthorized settlement in a claim. Thus, in the case of *Aiken v. National Fire Safety Counselors,* 36 Del.Ch. 136, 127 A.2d 473 (1956), plaintiffs' attorney, after purportedly agreeing to the terms of the settlement of the claim in issue, thereafter took the position that there was in fact no binding agreement to settle because such attorney had not obtained the prior consent of his clients to the making of such contract. The Court ruled that plaintiffs were entitled to disavow the settlement in question despite the fact that their attorney had made an agreement to such effect, holding that although under some circumstances an attorney has by reason of his employment either the implied or apparent authority to consent to the entry of a judgment binding on his clients if he acts in good faith, such authority does not allow an attorney to compromise an action solely on the basis of his having been retained as counsel in the matter, the Court being of the view that in such a case a plaintiff is entitled to submit evidence designed to overcome the presumption that his attorney had the authority to enter into the disputed settlement agreement. See also *Strattner v. Wilmington City Electric Co.,* Del.Supr., 53 A. 436 (1901), and *Wood v. Bangs,* Del.Supr., 48 A. 189 (1900), and generally See Annotations in 66 A.L.R. 107, Authority of Attorney to Compromise Suit, and 56 A.L.R.2d 1290,

Authority of Attorney to Dismiss or Otherwise Terminate Action.

Plaintiff contends, however, that the aforesaid rule should be followed only in situations in which an attorney has entered into an agreement to dismiss or settle litigation without the consent of his client, citing the case of *Christy v. Atchison, T. & S. F. Ry.*, supra, in which it was held that an attorney has broad power to make admissions binding upon his client, the Court stating:

> "It is well settled that short of a compromise of a client's claim or a confession of judgment the authority of counsel in a case extends to all the customary incidents of litigation and embraces all agreements, stipulations, and admissions appertaining to its conduct through the courts. . . . The stipulation in question here was not a compromise or a confession of judgment. It was merely an agreement as to the existence of relevant facts entered into without fraud, mistake, or collusion, but in good faith, to save expense, and to facilitate the trial of the case. Though it resulted in a judgment against the county, neither party having offered further evidence, still the judgment was not by confession, but came from the court's application of the law to the facts before it."

Plaintiff accordingly argues that in the case at bar, as in the cited case, the admissions made by defendants' counsel in the answers sought to be stricken did not amount to confessions of judgment or compromises of a claim but rather were filed in order to narrow the issues, minimize expense and move the case towards trial.

In my opinion, it is essential, in advancing the interests of justice, that the attorney-client relationship, one of principal and agent, permit an attorney to enter into stipulations and admissions in the course of representing his client. However, defendants, in support of their motions, rely on special circumstances, namely that Howard R. Hughes' alleged incompetency, dating from 1974 or earlier, terminated the attorney-client relationship existing between him and his then counsel in this litigation, thereby nullifying the admissions made on behalf of Mr. Hughes and Summa Corporation in the amended answers under attack and further that this Court has the power required to relieve defendants from the alleged effects of a serious tactical mistake made by their former chief counsel. Furthermore, noting that the attorney-client relationship constitutes a form of agency, 7 C.J.S. Attorney and Client § 79, defendants argue that the loss of capacity on the part of a principal nullifies the authority of the agent to act on the principal's behalf, Restatement (2d) of Agency, Section 122, and further that under such circumstances the authority of the agent terminates even in the absence of notice of his principal's incapacity, Restatement (2d) of Agency Section 122, Comment (b), and in support of their contention that mental illness or incapacity terminates the authority of an attorney to act on behalf of his client, defendants cite *Donnelly v. Parker*, 158 U.S.App.D.C. 335, 486 F.2d 402 (1973); *In re Houts*, 7 Wash. App. 476, 499 F.2d 1276 (1972), and *Evans v. York*, Mo.App., 217 S.W.2d 749 (1949). However, these cases are concerned with situations in which a client has been formally adjudicated to be mentally ill or incompetent. Thus, in 7 C.J.S. Attorney and Client § 115, page 947, it is stated that:

> "In the absence of any other adjudication of insanity than commitment to a hospital, there being no guardian, it has been held that the [attorney and client] relation continues in full force as to all matters included in the original contract." (matter in parentheses added).

See also 71 A.L.R.2d 1247, Capacity of One Who is Mentally Incompetent but not so Adjudicated to Sue and be Sued in His Own Name, and cases cited therein which stand for the principle that generally, in the absence of an adjudication as to the existence of mental illness, a litigant is presumptively competent. See also *Ritter v. Ritter, Inc.*, Sup., 38 N.E.2d 997 (1942), and *Kirwan v. Connecticut*, 168 Conn. 498, 363 A.2d 56 (1975). Furthermore, in *Kemppainen v. Finckh*, 12 Wash.App. 175, 528 P.2d 485

(1974), the policy behind this rule is stated as follows:

"This rule is commended by reason. Adoption of the minority rule [that an adjudication of insanity is not a pre-requisite to avoiding an unfavorable judgment] would extend an invitation to all unsuccessful litigants to avoid their defeat by claiming an earlier incompetency. In view of the corresponding rule of *In re Dill,* 60 Wash.2d 148, 372 P.2d 541 (1972) that a person adjudicated incompetent cannot sue or be sued without the appointment of a guardian the majority rule gives judgments an important measure of certainty." (matter in brackets added).

█ I conclude that defendants' motion to withdraw their amended answers on the ground of the mental incompetency of Howard R. Hughes at the time of the filing of their amended answers must be denied.

█ Turning to defendants' motion for relief from the Court's order of June 6, 1972 which granted partial summary judgment for plaintiff in the form of an accounting it would appear, as defendants argue, that the seeking of relief from an interlocutory order such as that entered in the present case on June 6, 1977, although based upon the reasons found in Chancery Court Rule 60(b) for relief from a final judgment, would require a less stringent showing of hardship and the like than in the case of an application for relief from a final judgment, *Richards v. Hamon,* Del.Supr., 178 A.2d 140 (1962), I am satisfied that such relief must also be denied for the reasons given above because what is at issue here is not a mistake in the true sense of the word but a tactical decision such as is subject to being made routinely in the course of complex litigation. I see no reason why present counsel should be permitted successfully to question such decision now. Accordingly, although the tactical decision by the defendants' then attorneys to make significant admissions by way of amended answers, which present counsel now seek to *withdraw* and which were not required to be made in order to avoid the taking of Mr. Hughes' deposition (assuming him then to have been mentally incompetent), such decision was not, in my opinion, a mistake within the meaning of Chancery Court Rule 60(b).

To rule otherwise would, in my opinion, open the door to reconsideration of the grievances of all unsuccessful litigants and would serve as a convenient means of seeking relief from judgments entered as a result of interim decisions made by counsel in the course of moving litigation towards a final resolution. I am of the opinion that the type of mistake contemplated by the Rule does not include a tactical mistake of competent counsel made in the course of conduct of a case entrusted to his discretion. Finally, I find nothing inconsistent with this in the Delaware Lawyers' Code of Professional Responsibility, Disciplinary Rule 7-101.

Defendants' motion for leave to withdraw or to disavow their amended answers and to be relieved from the effect of the entry of summary judgment in favor of plaintiff and against them entered by this Court on June 6, 1977 is denied.

An appropriate form of order may be presented on notice.