EFiled: May 30 2014 03:22PM EDT
Transaction ID 55522262
Case No. 7048-VCN

COURT OF CHANCERY
OF THE
STATE OF DELAWARE

JOHN W. NOBLE
VICE CHANCELLOR

417 SOUTH STATE STREET
DOVER, DELAWARE 19901
TELEPHONE: (302) 739-4397
FACSIMILE: (302) 739-6179

May 30, 2014

R. Bruce McNew, Esquire
Wilks, Lukoff & Bracegirdle, LLC
1300 N. Grant Avenue, Suite 100
Wilmington, DE 19806

David A. Jenkins, Esquire
Smith Katzenstein & Jenkins LLP
800 Delaware Avenue, Suite 1000
Wilmington, DE 19801

Re:  *The Ravenswood Investment Company, L.P. v.
Winmill & Co. Incorporated*
C.A. No. 7048-VCN
Date Submitted: February 20, 2014

Dear Counsel:

Plaintiff The Ravenswood Investment Company, L.P. ("Ravenswood") is a

stockholder of Defendant Winmill & Co. Incorporated ("Winmill"). Ravenswood

initiated this proceeding pursuant, in part, to 8 *Del. C.* § 220 to inspect certain of

the company's books and records. Perhaps because Ravenswood also asserted

breaches of fiduciary duty against Winmill's directors in the same complaint[1] (or

---

[1] *See Ravenswood Inv. Co., L.P. v. Winmill & Co., Inc.*, 2013 WL 396178, at *2 (Del. Ch. Jan. 31, 2013) (deferring resolution of the defendants' motion to dismiss the fiduciary duty claim until after the Court addressed the integrally related Section 220 claim).

perhaps because this is not the only pending lawsuit between the parties[2]), it has

taken an unusual length of time for Ravenswood's Section 220 claim to advance to

this point.

The present dispute before the Court is narrow in scope. Ravenswood has

received access to most of the books and records it initially requested—except for

the company's financial statements. The delay regarding this category of

information stems from a contentious dispute over an apparently novel legal

question: whether, under Delaware law, Winmill may require Ravenswood to

agree not to trade in Winmill stock as a condition to inspect its nonpublic financial

statements. During an earlier oral argument in this proceeding, Ravenswood's

counsel stated twice that the trading restriction is the sole, substantive Section 220

issue in dispute.[3] He made a similar statement during an oral argument in

---

[2] *See, e.g.*, *Ravenswood Inv. Co., L.P. v. Winmill*, 2013 WL 6228805 (Del. Ch. Nov. 27, 2013) (addressing the plaintiff's motion for partial summary judgment and resolving certain discovery disputes); *Ravenswood Inv. Co., L.P. v. Winmill*, 2011 WL 2176478 (Del. Ch. May 31, 2011) (granting in part and denying in part the defendants' motion to dismiss).

[3] *See* Tr. of Oral Arg. Pl.'s Mot. to Compel and for Sanctions 29 ("The only real dispute here in the 220 action, the 220 count, is whether the defendants can require you [*i.e.*, Ravenswood] to surrender preexisting rights and leverage your access to information on this surrender of those rights [to trade]."); *id.* 44 ("The real dispute here will be on the trading and transfer restrictions that they [*i.e.*, Winmill] want to impose. That's where the dispute is. If they took that out of

Ravenswood's related litigation against Winmill's directors.[4] And, despite arguing generally that the facts revealed in discovery do not justify confidential treatment of Winmill's financial statements, Ravenswood made plain on the first page of its opening brief that the parties' key Section 220 disagreement centers not on confidentiality but on the legality of conditioning inspection rights on the proposed trading restriction.[5]

These statements are binding on Ravenswood.[6] Winmill stipulated to submit this matter to the Court on briefs in lieu of a trial based, in part, on them.

---

their confidentiality agreement, we told them we would sign it. . . . So that's where we'll be focused at trial.").

[4] *See* Tr. of Oral Arg. Pl.'s Mot. to Compel 40-45, *Ravenswood Inv. Co., L.P. v. Winmill*, C.A. No. 3730-VCN (Del. Ch. May 14, 2013) ("Your Honor, if I could speak about a chief issue. It's the sole issue in this case, and they [*i.e.*, Winmill] have said so in their response. . . . [T]he only real issue is the trading restrictions and the scope of the trading restriction which they're insisting on. . . . My client's obligation under the federal securities laws do or do not depend on what Your Honor says they get. They still have issues with that. Agreed. But it looks like a pure legal issue.").

[5] *See* Pl.'s Opening Br. in Lieu of Trial ("Pl.'s Opening Br.") 1 ("As this Court is aware, the dispute between the parties does not relate to 'confidentiality,' but instead to provisions in Winmill's proposed Confidentiality Order, which would amount to a complete surrender by Ravenswood of any right to trade its stock in the future.").

[6] *See Barlow v. Finegan*, 76 A.3d 803, 805 (Del. 2013) (noting that an attorney has the general authority under Delaware law to act on behalf of a client "in the prosecution of an action for which [the attorney] has been retained"); *see also Trans World Airlines, Inc. v. Summa Corp.*, 394 A.2d 241, 245 (Del. Ch. 1978) ("[I]t is essential, in advancing the interests of justice, that the attorney-client relationship, one of principal and agent, permit an attorney to enter into stipulations and admissions in the course of representing his client.").

Accordingly, the legality of conditioning access to the company's financial statements on a trading restriction is the only substantive Section 220 issue now before the Court. Separately, Ravenswood also requests that the Court order Winmill to pay its attorneys' fees for alleged bad faith conduct throughout this proceeding.

For the following reasons, the Court concludes that it is inappropriate for Winmill to condition Ravenswood's access to its financial statements on the proposed trading restriction. The Court also concludes that Ravenswood is not entitled to have Winmill pay its attorneys' fees.

## I. BACKGROUND

Winmill, a Delaware corporation, is a holding company[7] for various investment securities.[8] Ravenswood owns 10,000 shares of its non-voting stock. Although Winmill is not a reporting company under the federal securities laws, its

---

In its brief, Ravenswood cites to Delaware case law on the standard for the Court to conclude that a party has waived a statutory or contractual right. *See, e.g.*, *Bantum v. New Castle Cty. Vo-Tech Educ. Ass'n*, 21 A.3d 44, 50-51 (Del. 2011); *AeroGlobal Capital Mgmt., LLC v. Cirrus Indus., Inc.*, 871 A.2d 428, 444-45 (Del. 2005). That standard does not govern whether an issue is properly before the Court.

[7] Defs.' Am. Answer to and Mot. to Dismiss the Am. Verified Compl. under 8 *Del. C.* § 220 and Class Action and Derivative Compl. for Breach of Fiduciary Duty ("Answer") ¶ 2.

[8] Am. Verified Compl. under 8 *Del. C.* § 220 and Class Action and Derivative Compl. for Breach of Fiduciary Duty ("Compl.") ¶ 2.

stock trades on the over-the-counter market.[9]  The last time that the company released financial information was on February 17, 2010, when it announced certain results for the nine months ending September 30, 2009.[10]

In September 2011, Ravenswood demanded to inspect four categories of Winmill's books and records: (i) quarterly and annual financial statements for the previous two years and for all subsequent periods until the company complies with the inspection demand; (ii) compensation records for the company's directors, officers, and voting stockholders; (iii) a stockholder list; and (iv) a list of trading in Winmill stock and options by the company's directors, officers, and voting stockholders.[11]  In its letter, Ravenswood offered to execute an "appropriate" confidentiality agreement to access these books and records.  It also identified its purpose for inspecting the company's financial statements as "determining the value of its investment in and the economic performance of Winmill."[12]

Winmill, in response, noted that it would provide the compensation and stockholder list information, subject to Ravenswood's executing a proposed

---

[9] Answer ¶ 1; Compl. ¶ 1.
[10] Answer ¶ 6; Compl. ¶ 6.
[11] App. to Defs.' Answering Br. in Lieu of Trial ("Defs.' Ex.") 1.
[12] *Id.*

confidentiality agreement. But, it refused to provide the financial statements or list of trading activity because Ravenswood would not agree "to be bound by a restriction forbidding it to trade in Winmill stock after it receives material, non-public information."[13] The company was apparently concerned about potential "tipper" liability under the federal securities laws. In essence, Winmill believed that Ravenswood would only have refused a trading restriction if it intended to trade, and the company thereby concluded that trading on material, nonpublic information was not a proper purpose for Ravenswood to inspect the financial books and records.[14]

Thus, Ravenswood brought this action in late 2011. The company has since provided access to all but one category of books and records demanded by Ravenswood. First, through discovery in the related lawsuit alleging breaches of fiduciary duty by Winmill's directors, Ravenswood received the compensation records and the list of trading activity (there was none) for the company's directors, officers, and voting stockholders during the relevant period.[15] Second,

---

[13] Defs.' Ex. 7.
[14] *Id.*
[15] Defs.' Ex. 27.

upon executing a confidentiality agreement that did not include a trading restriction, Ravenswood received the most recent Winmill stockholder list.[16] Thus, only Ravenswood's request for financial statements remains unsatisfied.

## II. ANALYSIS

A. *Ravenswood's Access to Winmill's Financial Statements*

Winmill maintains that a trading restriction is necessary and appropriate to avoid potential liability under the federal securities laws. John Ramirez, the company's senior associate general counsel, testified at his deposition to that effect.[17] Winmill has also framed its position as an extension of the company's "Insider Trading Procedures," which are internal policies intended "to ensure that material, non public information is not misused by the Company and its affiliates or their directors, officers, or employees."[18]

From the beginning of the parties' negotiations on a confidentiality agreement for Ravenswood to receive the financial statements, Winmill has sought to include a trading restriction. Its most recent proposal provides, in relevant part:

---

[16] Defs.' Exs. 28, 29, 30, 31.
[17] Defs.' Ex. 42 (Ramirez Dep.) 42-50.
[18] Defs.' Ex. 32.

> The Requesting Parties [*i.e.*, Ravenswood] agree not to trade in Winco's [*i.e.*, Winmill's] stock until the sooner of (A) three business days after the financial information received by them as part of the Documents becomes publicly available or (B) one year from the date they receive the Documents. Notwithstanding the foregoing sentence, the Requesting Parties may trade in Winco's stock at any time with a sophisticated person who has received the Documents pursuant to a signed Undertaking . . . . The Requesting Parties acknowledge that they are aware of the restrictions imposed by federal and state securities laws on a person possessing material non-public information about a company.[19]

This restriction is similar to one in a separate agreement (the "Sullivan Agreement") under which the company provided certain financial information to another stockholder in May 2012.[20]

Winmill's position is premised on its understanding of so-called tipper liability under the federal securities laws for disclosing material, nonpublic information to a recipient who then trades on that information. In its brief, Winmill cites considerable federal case law outlining the contours of tipper liability under Section 10(b) of the Securities Exchange Act of 1934.[21] Noticeably absent from its argument, however, is a statement by the Delaware Supreme Court

---

[19] Defs.' Ex. 38.
[20] Defs.' Ex. 40.
[21] Def.'s Answering Br. in Lieu of Trial ("Def.'s Answering Br.") 30-31 (citing *United States v. O'Hagan*, 521 U.S. 642 (1997); *SEC v. Obus*, 693 F.3d 276 (2d Cir. 2012)).

or this Court endorsing a trading restriction, in order to protect the corporation from tipper liability, as a lawful prerequisite for a stockholder to access financial books and records pursuant to Section 220. Ravenswood rejects Winmill's position, contending that Delaware law does not, and should not, support the trading restriction scheme contemplated by the company.[22]

The Court concludes that the legal arguments offered by Winmill, based on the company's internal policies and its senior associate general counsel's testimony, are unpersuasive. Delaware law has long recognized that valuing stock is a proper purpose to support a stockholder's request for financial information from a corporation under 8 *Del. C.* § 220.[23] Ravenswood's stated purpose, to value its stock, is clearly proper. Because Winmill is a thinly traded company that does not regularly release its financial information, the only practical way that Ravenswood can accurately value the stock may be to inspect the requested financial statements.[24] Having established this primary purpose, "any secondary

---

[22] Pl.'s Reply Br. in Lieu of Trial ("Pl.'s Reply Br.") 6-7.

[23] *See, e.g., CM & M Gp., Inc. v. Carroll*, 453 A.2d 788, 792 (Del. 1982) (citing *State ex rel. Rogers v. Sherman Oil Co.*, 117 A. 122, 125 (Del. 1922)) ("[T]he valuation of one's shares is a proper purpose for the inspection of corporate books and records.").

[24] *See Macklowe v. Planet Hollywood, Inc.*, 1994 WL 560804, at *4 (Del. Ch. Sept. 29, 1994) ("When a minority shareholder in a closely held corporation whose stock is not publicly traded

purpose or ulterior motive of the stockholder becomes irrelevant."[25] Winmill's unsupported speculation that Ravenswood may unlawfully trade based on the company's material, nonpublic financial information does not sufficiently establish that Ravenswood has an improper, actual purpose other than its proper, stated purpose: valuing its stock.[26]

The overall argument advanced by Winmill—that a corporation could condition access to the information necessary for a stockholder to value its stock on an agreement not to trade—would inappropriately frustrate this fundamental stockholder right. The whole point of valuing stock is so that a stockholder can determine what to do with it: to buy, to sell, or to use the value for some other appropriate purpose. After all, is there even a readily ascertainable value to stock that cannot be traded, under Winmill's proposal, for possibly an entire year? The Court is unwilling to incorporate such an inequitable notion into Delaware's

---

needs to value his or her shares in order to decide whether to sell them, normally the only way to accomplish that is by examining the appropriate corporate books and records."); *see also Helmsman Mgmt. Servs., Inc. v. A & S Consultants, Inc.*, 525 A.2d 160, 165 (Del. Ch. 1987).

[25] *CM & M Gp., Inc.*, 453 A.2d at 792.

[26] *See Pershing Square, L.P. v. Ceridian Corp.*, 923 A.2d 810, 817 (Del. Ch. 2007) ("A corporate defendant may resist demand where it shows that the stockholder's stated proper purpose is not the actual purpose for the demand. . . . [T]he defendant must prove that the plaintiff pursued its claim under false pretenses, and its primary purpose is indeed improper.").

Section 220 jurisprudence. Based on the arguments submitted by the parties, the Court concludes that the trading restriction proposed by Winmill is contrary to Delaware law.[27]

Whether Ravenswood's access to Winmill's financial statements should otherwise be contingent on executing an "appropriate" confidentiality agreement—as Ravenswood itself proposed in its inspection demand letter—appears to be an issue that is best initially addressed by the parties, not by the Court. If Winmill and Ravenswood are to be bound by a confidentiality agreement, then they should negotiate its terms. Having decided what appears to have been the primary disagreement surrounding Ravenswood's Section 220 claim, the Court is hopeful that the parties will continue to work together to advance this matter in an efficient manner, or at a minimum to identify and submit promptly to the Court any remaining aspects of the Section 220 dispute.[28]

---

[27] Of course, this is not to say that receiving information pursuant to 8 *Del. C.* § 220 in any way exempts Ravenswood, as a Winmill stockholder, from the federal securities laws to which it may otherwise be subject. Likewise, nothing in this decision should be interpreted as a conclusion on whether a Delaware corporation may or may not have tipper liability for providing material, nonpublic information to a stockholder pursuant to 8 *Del. C.* § 220.

[28] The Court's decision does not address whether the requested financial statements should be deemed confidential. If Winmill's and Ravenswood's confidentiality concerns have not been (or

B. *Ravenswood's Request for Attorneys' Fees*

Litigants in this Court typically pay their own attorneys' fees. This practice is known as the American Rule.[29] As a court of equity, however, this Court may require one party to pay another's attorneys' fees, for example, upon a showing of bad faith conduct during the litigation process.[30] "The bad faith exception is not lightly invoked."[31] For the Court to require Winmill to pay its attorneys' fees, Ravenswood "must produce 'clear evidence' of the bad faith conduct."[32]

The conduct of the parties and counsel in this litigation may not be pristine, but it cannot be said to rise to the level of bad faith. As recounted in painstaking detail in the briefs and during oral argument, much of the supposed bad faith conduct stems from a series of unfortunate and untimely miscommunications between counsel—from a misreading of the terms of an initial confidentiality proposal, followed by an apparent lack of initiative in prioritizing access to information outside the scope of the possible trading restriction, and even

---

cannot be) resolved, even in light of the Sullivan Agreement, then the Court is available to address that issue in the appropriate context.

[29] *See Tandycrafts, Inc. v. Initio P'rs*, 562 A.2d 1162, 1164 (Del. 1989).

[30] *See McGowan v. Empress Entm't, Inc.*, 791 A.2d 1, 4 (Del. Ch. 2000).

[31] *Beck v. Atl. Coast PLC*, 868 A.2d 840, 851 (Del. Ch. 2005).

[32] *See ASB Allegiance Real Estate Fund v. Scion Breckenridge Managing Member, LLC*, 2013 WL 5152295, at *6 (Del. Ch. Sept. 16, 2013).

including an errant copying of a subsequent confidentiality proposal.[33] It appears

that many, if not all, of these miscommunications could have been resolved—

likely without much difficulty—if counsel had simply communicated more

effectively instead of having passively permitted mistakes to accumulate into a

potential critical mass that, only superficially, may justify an attorneys' fee request.

A Section 220 action is ultimately a summary proceeding.[34] The timeline

contemplated by a summary proceeding requires a certain amount of cooperation

between counsel. From the starting block, the parties were already a step behind

schedule due to Ravenswood's commingling of a Section 220 claim with a breach

of fiduciary duty claim.[35] After the Court sought to focus the parties' attention on

the Section 220 claim, the ideal pace of cooperation between counsel has still been

---

[33] *See, e.g.*, Tr. of Oral Arg. on Brs. in Lieu of Trial 14-15, 22-25, 36-41, 43-48; Pl.'s Reply Br. 9-12; Def.'s Answering Br. 9-29, 43-49; Pl.'s Opening Br. 13-14. An example of conduct annoying Ravenswood involves Winmill's less-than-forthright disclosure of the Settlement Agreement which Ravenswood obtained from a third party. One may wonder about the uncertainty, inconsistency, or confusion, but bad faith on the part of Winmill is not part of the mix. This topic is simply further evidence of the discovery miscommunications which seem all too prevalent in these matters.

[34] *See Highland Select Equity Fund, L.P. v. Motient Corp.*, 906 A.2d 156, 157 (Del. Ch. 2006) ("Section 220 is an important stockholder right that, by statute, this court is directed to resolve in a summary proceeding."), *aff'd sub nom.*, *Highland Equity Fund, L.P. v. Motient Corp.*, 922 A.2d 415 (Del. 2007) (TABLE).

[35] *See Ravenswood Inv. Co.*, 2013 WL 396178, at *1 (citing *TravelCenters of Am., LLC v. Brog*, 2008 WL 868107, *1 (Del. Ch. May 31, 2008)) ("The Section 220 and fiduciary duty claim should not have been brought together.").

less than forthcoming for both parties. In this context, the conduct identified by Ravenswood does not meet the clear evidence standard of bad faith for the Court to award attorneys' fees against Winmill.

### III. CONCLUSION

For the foregoing reasons, the trading restriction contemplated by Winmill for Ravenswood to be able to inspect the company's financial statements is inconsistent with Delaware law. Each party shall bear its own attorneys' fees.

**IT IS SO ORDERED**.

Very truly yours,

*/s/ John W. Noble*

JWN/cap
cc: Register in Chancery-K